## Court of Appeals.

### May, 1903.

## THE PEOPLE v. CHARLES A. DOTY.[1]

### (175 N. Y. 164.)

RECEIVING STOLEN PROPERTY—EVIDENCE OF DEFENDANT'S RECEIVING GOODS STOLEN BY SAME THIEVES FROM ANOTHER OWNER—ADMISSIBLE TO SHOW GUILTY KNOWLEDGE.

Upon the trial of a defendant indicted for the crime of feloniously receiving stolen property, known to him to have been stolen, evidence that the defendant had received property stolen by the same thieves from a different owner is admissible to establish the guilty knowledge of the defendant in receiving the property charged in the indictment to have been stolen.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the Fourth Judicial Department, entered June 4, 1902, affirming a judgment of the Cattaraugus County Court rendered upon a verdict convicting the defendant of the crime of receiving stolen property knowing it to have been stolen.

The facts, so far as material, are stated in the opinion.

W. G. Laidlaw, for appellant.

George W. Cole, for respondent.

WERNER, J.: The defendant was convicted of the crime of feloniously receiving stolen property, under an indictment charging him with having bought and received one cow hide of the value of $6 from one Louis Torge, Jr., on the 6th day of December, 1900, at the town of Salamanca, Cattaraugus county, which hide was then stolen property and by the defendant known to have been stolen. The judgment of con-

---

[1] Affirming 73 App. Div. 78, 16 N. Y. Crim. Rep. 517.

viction was unanimously affirmed at the Appellate Division. The only question presented on this appeal arises upon defendant's exceptions to the rulings of the trial court, first in receiving, and thereafter in refusing to strike out, evidence of another purchase of stolen property by the defendant from the same persons who had stolen the property specified in the indictment. The hide referred to in the indictment had been stolen from the tannery of the United States Leather Company, in Salamanca, by four school boys named Louis Torge, Jr., John Neugart, Clarence Ostler and Leon De Long, all of whom were under fifteen years of age, except Torge, who had just passed that age. None of the fathers of these boys were engaged in any business involving traffic in hides. The defendant was a harness maker and junk dealer, who bought and sold hides. These boys went to the defendant and asked him if he wanted to buy any hides. He replied that he would buy all they could bring, at six cents a pound. Thereupon the boys went to the tannery of the Fisher Tanning Company and stole a green hide, which they took to the defendant, who weighed it and paid them six cents a pound. On the 6th day of December, 1900, which was a few days after the occurrence just described, the same boys again went to the defendant's shop and asked him if he would buy more hides. Upon receiving an affirmative reply the boys repaired to the tannery of the United States Leather Company, also located in Salamanca, where they stole a Texas hide, which they took to the defendant, who received the same and paid for it at the rate of six cents per pound, although the market price of Texas hides was then eleven cents per pound. In commercial parlance this Texas hide was what is known as a "green hide," but it had been removed from the animal in the preceding August and was readily distinguishable from a fresh local hide, because it was folded with the flesh side out and was free from moisture except on the inside of the package, where it had been salted.

At the trial the four boys first testified to the theft of the Texas hide specified in the indictment, and the sale thereof to the defendant. Then they were permitted to give evidence of their theft of the first hide from the Fisher Tanning Company and its sale to the defendant. The exceptions taken by the defendant to the rulings of the trial court in this behalf form the basis for this appeal.

The learned counsel for the defendant admits that under a charge of felonious receiving of stolen property, the guilty knowledge of a defendant may be established by evidence of other previous transactions of a similar nature, but he argues that this is only permissible when the previous thefts were of the same kind of property, committed by the same persons, from the same owners set forth in the indictment. In support of this argument he cites Rex v. Dunn & Smith (1 Moody C. C. 146); Coleman v. People (55 N. Y. 81); Copperman v. People (56 N. Y. 591), and People v. Grossman (168 N. Y. 51.)

The reason for the rule under which evidence of other crimes is admissible to prove the particular crime for which a defendant is on trial, is founded in the necessity for establishing criminal intent in cases where such intent may not be inferred from the commission of the single act charged in the indictment. Among the crimes of which criminal intent is an essential ingredient are the felonious receiving of stolen property, the passing of counterfeit money, obtaining money or property under false pretenses, and forgeries. In these classes of cases criminal intent cannot always be inferred from or proved by the act itself, and, therefore, resort must be had to other similar offenses to prove intent. The mere statement of this rule is sufficient to show that criminal intent in the commission of one act may not be predicated upon or inferred from the commission of another act or crime unless there is such a relation of time, place and circumstance between the

two acts that the proof of one logically tends to prove the intent and purpose underlying the other. When such a relation is shown, evidence which tends to prove the particular crime for which a defendant is on trial, is not incompetent because it incidentally proves the establishment of another crime. There is an infinite variety of time, place and circumstance in the commission of crime. A general rule like the one under consideration must be applied with intelligent caution to different conditions and in the light of particular facts. It is obvious that in its application to other crimes than that of receiving stolen property, the rule cannot be hedged about by arbitrary limitations that will fit all cases, and no such impossibility has ever been attempted by the courts. In the last analysis, therefore, the question here presented is whether the charge of receiving stolen property is one with reference to which the courts have adopted, or can adopt, an unvarying standard of proof. We do not think the cases referred to by the learned counsel for the defendant subscribe to any such rule, although it must be admitted that there is such similarity of circumstance in them all as to furnish plausible ground for the argument that the elements of proof therein enumerated are indispensable in every case.

In Rex v. Dunn & Smith (*supra*) the defendants were tried together, the first for larceny and the second for receiving stolen property. All the property received by Smith was stolen by Dunn from his employers. There were many distinct larcenies and receivings, which extended over a period of four or five months. When evidence was sought to be given against Smith of all the prior receivings by her, it was suggested that some of them were quite remote from the receiving upon which the prosecutor had elected to proceed, but the court remarked that as all the property had been stolen from the same persons and had all been brought to Smith by Dunn, it was proper to

Vol. XVII—24

submit the evidence to the jury upon the question of guilty
knowledge. The Dunn case is referred to as a leading author-
ity in Coleman v. People (*supra*). Coleman was tried upon
the charge of having feloniously received certain pig iron, de-
scribed in the indictment, which had been stolen from one
Burke. The district attorney was permitted to prove by one
Briggs that he had lost a quantity of wrought iron bridge rail-
ing, which he afterwards found on Coleman's premises. Briggs
testified to a conversation with Coleman in which the latter
admitted that he purchased the piece of bridge railing from
some boys. This was held error because " the Briggs iron had
no connection with the pig iron; it was taken from another
place, belonged to another person, was of a different character,
received at another time, and, for aught that appears, some of
it from different persons." Judge ALLEN, who wrote for this
court in the Coleman case, in referring to the circumstance that
in Dunn's case all the property had been stolen by him and all
of it brought by him to his co-defendant Smith, said: " It is
unnecessary to say that all these qualifications must exist, but
to warrant the introduction of such evidence there must be
such a connection of circumstances as that a natural inference
may be drawn that if the prisoner knew one article was stolen
he would also be chargeable with knowledge that another was."
On the second Coleman appeal (58 N. Y. 555) the question
was again presented whether it was proper to receive evidence
of other acts of a like character to prove defendant's guilty
knowledge of the act charged in the indictment, and there, speak-
ing for the court, Judge ALLEN said, " in both cases (Coleman
and Copperman cases, *supra*) the rule is recognized as well
established that in cases like the present, where guilty knowl-
edge is an ingredient of the offense, the same may be proved
as other facts are proved, by circumstantial evidence, and that
other acts of a like character, although involving substantive
crimes, may be given in evidence to prove *scienter*. The prin-

cipal limitation of the rule is, that the criminal act which is sought to be given in evidence, must be necessarily connected with that which is the subject of the prosecution, either from some connection of time and place, or as furnishing a clue to the motive on the part of the accused." The learned author of that opinion then refers to the circumstances which connected the several transactions given in evidence with the one for which Coleman was on trial, and, among others, mentioned the fact that the iron had been stolen from the same owners, by the same thieves, and received by Coleman within a short time before the alleged commission of the crime for which he was then on trial. In Copperman's case (*supra*), one Robinson had systematically stolen dry goods from his employers and sold the stolen goods to the defendant, who was a pawnbroker. The indictment charged the defendant with receiving two parcels of sewing silk knowing it to have been stolen. The prosecution was permitted to show the theft of other goods by Robinson from his employers, and the sale thereof to the defendant. In justifying the reception of such evidence Chief Judge Church said, " if a person has frequently received articles of property of a particular kind from another, knowing that such other person stole them from a particular person or place, and he is offered on a subsequent occasion similar articles by the same person and under like circumstances, it does directly tend to establish that the articles thus offered were also known to be stolen. It is a natural and necessary inference, and one which every reasonable man would draw. It is an inference derived from the laws of human action." In Grossman's case (*supra*) the defendant was convicted of knowingly receiving stolen railroad brass. Evidence of previous thefts of similar property from the same owners by the same thieves and the sale thereof to the defendant was held competent on the question of *scienter*, upon the authority of Coleman v. People (*supra*) and People v. McClure (148 N. Y. 95). In the

latter case McClure was convicted of feloniously receiving stolen goods, consisting of cigars, cigarettes and tobacco. The proof tended to show that these goods were stolen from a railroad car in which they were being shipped under consignment to certain vendees. The same car contained a consignment of dry goods from other vendors to other vendees. Both classes of goods were found in the possession of McClure. At General Term the judgment of conviction was reversed on the ground that it was incompetent, under a charge of feloniously receiving stolen cigars and tobacco, to give evidence showing that McClure also received the stolen dry goods from some other person at some other time, knowing them to be stolen. This court reversed the judgment of the General Term and affirmed the conviction of McClure on the ground that it was difficult, if not impossible, to separate the transaction; that all the goods had been taken from the same car and that the evidence gave the jury the right to infer that all the goods had been stolen therefrom by the same person and received from him at one time by the defendant. In People v. Dowling (84 N. Y. 486) the prosecution proved the finding of other goods in defendant's possession than those named in the indictment, and there was testimony tending to prove that these other goods had also been stolen and received with guilty knowledge. Dowling, the defendant, offered to prove that he had purchased a part of these goods in Schenectady. The court rejected the offer and excluded the testimony. In discussing the question whether that ruling was erroneous, Judge FOLGER referred to the general rule that on a trial for one offense, proof is not admissible that the accused has committed another, though it be of the same kind, and then, by way of illustration, he added: "There are exceptions when guilty knowledge is made a part of the crime, as where all the property made the subject of the proof has been stolen from the same person and delivered to the receiver by the same thief, though at different times, and

there is such a connection of circumstances as furnishes a natural inference that, if he knew one piece of it was stolen, he must have known every piece was."

We have reviewed thus at length the cases decided by this court upon the subject of receiving stolen goods, in the effort to ascertain if in any or all of them this court has adopted the arbitrary limitation that evidence of other receivings of stolen property than those specified in the indictment can only be accepted as evidence upon the question of guilty knowledge where all the property has been stolen from the same person. We do not think it has. The foregoing extracts from the opinions contain many remarks that seem, at first glance, to indicate that the limitation referred to is a necessary part of the rule under which proof of guilty knowledge may be made by evidence of other transactions; but when the cases are closely scrutinized it will be observed, either that the facts of a particular case have justified the remarks which suggest this limitation, or that the court, by way of illustration, has merely stated a combination of facts which are always clearly competent as evidence of guilty knowledge on a trial for receiving stolen property. The Coleman case (55 N. Y. 81) is now always cited as an authority in cases of this character and upon this very question. But it is to be noted that Judge ALLEN took occasion to qualify his indorsement of Dunn's case (*supra*) by adding, " it is unnecessary to say that all these qualifications must exist; but to warrant the introduction of such evidence there must be such a connection of circumstances as that a natural inference may be drawn, that if the prisoner knew one article was stolen he would also be chargeable with knowledge that another was." What were the qualifications which existed in Dunn's case and were referred to in Coleman's case? 1st. That all the goods had been stolen from the same owner. 2nd. That they had all been stolen by the same thief. 3rd. That the thief had brought them all to the same receiver. As the sec-

ond and third qualifications just referred to must exist in
every case, it is obvious that the first is the only one that can
ever be omitted, and that is probably what dictated the lan-
guage above quoted from Coleman's case to the effect that " it
is unnecessary to say that all these qualifications must exist."
We think, therefore, that we are not bound by authority to
make an arbitrary application in every case of the rule as it
was applied in Dunn's case and followed in the Coleman and
Copperman cases. In all of those cases the rule as stated
fitted the facts proved. Nothing was said in any of them that
can be regarded as controlling in other cases except that upon
a similar state of facts such evidence as was there received is
always competent. The above-quoted remarks of Judge ALLEN
seem clearly to indicate the purpose of this court to leave in the
rule sufficient flexibility to render it applicable to cases where
the same thief brings to the same receiver property stolen from
different owners; and that is this case.

Assuming that we are not concluded by authority, it still
remains to be ascertained whether there is anything in the
principle which controls evidence of this character to forbid
its admission when the same receiver has, at various times,
received from the same thief property stolen from different
owners. Guilty knowledge is one of the indispensable elements
of the crime of receiving stolen property. Unless guilty knowl-
edge can be predicated of the transaction itself, or established
by a defendant's admissions, it must be proved by other acts
of a like character. The guilty intent to be proved is that
which attaches to the transaction named in the indictment.
In one case this may be shown by the similarity of numerous
articles all apparently coming from one source; in another it
may be quite as conclusively inferred from the pronounced
dissimilarity of a large variety of articles brought by the thief
to the receiver. If a school boy should bring to a dealer in
dry goods numerous installments of silks, cloths and other arti-

cles peculiar to that line of trade, the dealer, if an honest and prudent man, would naturally suspect, not only that the goods had been stolen, but that they had all been stolen from the same owner. That would be guilty knowledge. If another school boy should bring to a dealer in second-hand goods a valuable watch on one day, a gun on another day, a fur-lined overcoat on still another day, and so continue to bring various articles for an indefinite number of days, there would be quite as little escape from the conclusion that the different articles had been stolen as in the instance first cited, but not necessarily that they had all been stolen from the same person; on the contrary, it would be rather convincing evidence that they had been stolen from different owners. Would the inference of receiver's guilty knowledge be any the less cogent because the goods had not all been taken from the same owner? The whole question depends upon the connection between the transaction sought to be proved and the one set forth in the indictment. If the same thief brings goods to the same receiver, the question whether the articles were all alike and stolen from one owner, or whether they were unlike and stolen from different persons, may be important as bearing upon the guilty knowledge of the receiver, but we can see no reason for making this naked distinction the sole factor which determines whether evidence of this character is admissible or not. If the distinction referred to were alone permitted to control, then a professional receiver of stolen goods could make himself absolutely immune from conviction and punishment by simply insisting that the thieves with whom he deals should not steal more than once from any one person.

The subject is one that is capable of much more voluminous argument and illustration, but enough has been said to bring us directly to the practical application of the discussion to the case at bar. The thieves in this case were young boys under fifteen years of age. The defendant was a man of mature years.

The boys were going to school and the defendant was conducting a harness and junk shop. The village in which they all resided is a small one, where almost every resident is probably known to every other. When the boys went to the defendant's shop to ask if he would buy a hide, instead of making such inquiries as the ages of these boys, coupled with the various occupations of their fathers, would have suggested to a prudent and honest tradesman, the defendant told the boys that he would buy all they could bring at six cents a pound. The first hide brought to the defendant by these boys was the one stolen by them from the Fisher tannery. Even if we assume that there was nothing in the appearance of that hide to put the defendant on his guard, the circumstances above referred to were such, we think, as would have put an honest man upon inquiry. There was enough, to say the least, to warrant the jury in drawing the inference that the defendant was chargeable with knowledge that the boys did not honestly obtain possession of the hide. Within a few days thereafter the same boys brought to the defendant the hide specified in the indictment. It was not a green, domestic hide like the first one, but a Texas hide that was comparatively dry and done up in a way quite familiar to dealers in hides. While the defendant might have been thrown off his guard in the purchase of the first hide by the remark of one of the boys, "that his father had killed a cow," the second hide, for receiving which the defendant was tried and convicted, was of such a character that not even a novice in the business could have been deceived. The first thing that would have suggested itself to an honest dealer would have been to ask the boys where they got the hide, but no such inquiry was made, and the only excuse presented for defendant's failure to do so is that he bought the hide without opening it to ascertain its condition. The market price of such hides was eleven cents per pound, while the defendant paid only six cents per pound.

Was there not such a connection of time, place and circumstance between the two transactions that proof of the former was cogent evidence of defendant's guilty knowledge in the latter? Would the proof upon the subject of defendant's guilty knowledge be any more convincing or pertinent if the first hide had been stolen from the same owner as the hide set forth in the indictment? These questions seem to us to carry their own answers. Our conclusion, therefore, is that neither authority nor principle require us to hold that in prosecutions for receiving stolen property, evidence of other receivings by the same defendant from the same thief, can be admitted upon the question of a defendant's guilty knowledge only in cases where the different thefts have been made from the same owner; but on the contrary we think there are cases, of which the one at bar is a fair example, in which the guilty knowledge of a defendant in the receiving of stolen property charged in the indictment to have been stolen, may be established by evidence of other receivings from the same thief, although in each case the property may have been taken from a different owner.

This conclusion requires the affirmance of the judgment herein.

PARKER, Ch. J., GRAY, VANN and CULLEN, JJ., concur; O'BRIEN and BARTLETT, JJ., dissent.

Judgment of conviction affirmed.