# CHARLESTON.

## STATE V. BAKER.

Submitted April 29, 1919.   Decided May 6, 1919.

1. CRIMINAL LAW—*Evidence—Testimony of Conspirators.*

    A *prima facie* case of conspiracy between defendant and another, or others, in the commission of a crime having been established, acts and declarations during its progress, by any one of them, whether defendant is present or absent, is admissible as evidence against him; but not declarations made after the transaction is ended. (p. 152).

2. SAME—*Other Offenses—Scienter—Evidence.*

    On the trial of one charged with receiving stolen goods, evidence that he received other stolen goods, knowingly or ignorantly, either prior or subsequent to the time of the offense charged, is admissible to prove a *scienter*, provided such other collateral acts are not too remote in point of time. (p. 154).

3. SAME—*Res Gestae—Acts and Declarations Upon Receiving Stolen Goods.*

    Acts and declarations by accused on receipt of stolen goods, or on his arrest while the goods are in his possession, are parts of the *res gestae*, and evidence of them is admissible whether it be for or against him. (p. 155).

4. SAME—*Res Gestae—Conduct and Statements of Accused.*

    To constitute the conduct and statements of accused parts of the *res gestae*, it is not necessary that they should be precisely concurrent with the act charged; it is sufficient if they spring from it and are done and made under circumstances precluding design. (p. 155).

5. SAME—*Assignment of Error—Sufficiency.*

    An assignment of error relating to the rejection of proffered evidence, or refusal to permit a witness to testify, who has violated the court's order excluding witnesses from the court room during the hearing of testimony, not excepted to, will not be considered on writ of error. (p. 157).

6. SAME—*Purpose of Evidence—Requested Instruction—Complaint.*

    A party who has failed to request the court to instruct the jury for what purpose certain evidence was received, which is admissible for a particular purpose only, cannot complain. (p. 157)

    (MILLER, PRESIDENT, absent).

Error to Circuit Court, Wood County.

Monroe H. Baker and Burns Cottrill were jointly indicted for buying and receiving stolen goods, and defendant Baker was tried separately and convicted, and he brings error.

*Reversed and remanded for new trial.*

*Chas. E. Hogg* and *R. E. Bills,* for plaintiff in error.

*E. T. England,* Attorney General, *Charles Ritchie,* Assistant Attorney General, and *Jas. S. Wade,* for the State.

WILLIAMS, JUDGE:

Defendant and one Burns Cottrill were jointly indicted for buying and receiving from William Gilman and Wilbert Peebles stolen goods, the property of the Germania Club, a corporation, knowing them to be stolen. Defendant was tried separately, convicted and sentenced to five years imprisonment in the penitentiary, and he brings error.

He assigns as error the admission of declarations made by third parties, not in his presence. This relates to conversations which occurred between Gilman and Peebles, the two principal prosecuting witnesses, and Burns Cottrill concerning the sale to the latter of the stolen property; consisting of poker chips, cards, cigars and three billiard balls, alleged to be worth in all $25.00. The prosecuting witnesses admit they stole the articles from the Germania Club rooms, in the City of Parkersburg. They swear they entered the building twice in the same afternoon, the first time stealing eleven pints of whiskey, put up in pint bottles, and the second time, the property named in the indictment; that a boy named Charles Rudy, who was with them, took two pints home with him, and they took the remaining nine up to the high school building and hid them in a garbage can, and came down on Eighth Street and saw Monroe Baker the defendant. Gilman swears he sold defendant four cigars that he had stolen out of the Germania building, for five cents; that defendant asked him where he got them and he told him at the Germania Club, and defendant said "to be careful." Witnesses swear they then told him about the whiskey and where they had put it, and that defendant said to them, in case they could not sell it, to bring it to him and he would buy it. Later

in the afternoon, nearly dark, these two boys, Gilman and Peebles, swear they again came back on Eighth Street and met Burns Cottrill, and asked him where Mon Baker was, and that Cottrill replied that he was busy, they couldn't see him and asked them what they wanted with him, and they told him they had some whiskey they wanted to sell him; that Cottrill said "to wait and he would go and see Mon," and immediately left them and went across the street and up into Baker's apartments, which were on the third floor, over Stout's drug store; that in a short time Cottrill returned and the three then went up to the high school building, where the whiskey had been hidden, and discovered that seven pints of it had been stolen, and they sold the remaining two to Cottrill for $1.50. They say Cottrill asked them where they got the whiskey, and they told him at the Germania Club, and also told him there were poker chips and cards up there, and Cottrill replied that, "Mon needed poker cards and would give us twenty cents a deck for all cards with unbroken seals; that men would go up there to play and Mon wouldn't use cards that hadn't unbroken seals." Gilman swears Cottrill was then employed by defendant. After this conversation with Cottrill, witnesses swear they went back and entered the Germania Club rooms the second time, and stole the cards, poker chips, cigars and three billiard balls, and had part of them in a basket; that they met Cottrill on Sixth Street in front of the Parkersburg Fish & Oyster Market and there sold him some of the articles for $3.00; that he said it was too dark to see the other things, and to take them up to Baker's apartments; that they then followed him up to the toilet room in Baker's apartments and there sold him the balance of the stuff for $5.00, making $8.00 in all; that they were not allowed in Baker's room and did not see him while up there, but did see him on the sidewalk when they came back down the stairs, and he asked them if they had seen Cottrill and they told him they had, and had sold him some poker chips, billiard balls and stogies for $8.00, and he replied, "Go a little careful," and then they separated. This evidence sufficiently connects defendant with the transaction between Cottrill and the culprits to establish a *prima*

*facie* case of conspiracy between Cottrill and defendant and makes the declaration of either one, made while engaged in the commission of the crime, competent evidence against the other. Declarations and conversations of a conspirator, made in furtherance of the common purpose or during the progress of the crime, are competent evidence against a co-conspirator. "On its being shown that one or more persons were acting in concert with the defendant about the thing in question, all with a common object, declarations during its progress, by any one of the others, whether present or absent, may be given in evidence against the defendant; yet not declarations after the transaction is ended." 2 Bishop's New Crim. Proc., §1248. *State.* v. *Cain,* 20 W. Va. 679, and *State* v. *Prater,* 52 W. Va. 144.

Evidence of a like offense, committed subsequently to the one charged, was admitted over defendant's objection, of which he complains. About a week after the boys had burglarized the Germania Club and had been arraigned for it and placed under bond, they entered a dwelling house and stole therefrom three quarts of whiskey and a quart of gin, and were allowed to testify that they sold the whiskey to defendant. An essential element of the crime of receiving stolen goods is the scienter or guilty knowledge at the time they were received. This testimony was admissible as evidence of defendant's guilty knowledge when he made the previous purchase for which he is indicted. Such evidence, says Wigmore, Vol. 1, § 325, is received to prove guilty intent on the theory that the oftener one is found in possession of stolen goods, the less likely it is that his possession, on the occasion charged, was innocent.

"It is not a question of specifically proving knowledge; it is merely a question of the improbability of an innocent intent. Several practical differences result: (1) It is immaterial whether in the other instances a *knowing* possession is shown. It is the mere fact of the repeated possession of other stolen goods that lessens the chances of innocence. (2) It is immaterial that the other goods were *similar* in kind to those charged, or were received from the same person. On the contrary, the greater the variety of the goods

and of the sources they came from, the more striking the coincidence, and the more difficult to believe that the explanation is an innocent one. (3) It is immaterial whether the other possessions occurred before or after the possession charged; it is the multiplication of instances that affects our belief, and not the time of their occurence,—provided the time is not so distant as to be accountable for on the theory of chance acquisition.'' 1 Wigmore on Evidence, *supra*.

Evidence of other similar acts, whether prior or subsequent to the act charged, is also admissible to show a plan or system. The fact to be ascertained is one of induction, and the greater the number of consistent facts the more certain is the induction. ''The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. In order to prove purpose and design, evidence of system is relevant; and in order to prove system, collateral and isolated offenses are admissible from which system may be inferred.'' 1 Wharton's Crim. Evi., (10th ed.), Sec. 39. Underhill's Crim. Evi., (2nd ed.), Sec. 89; and *Bank* v. *Barker,* 75 W. Va. 244.

The decisions regarding the admissibility of evidence of subsequent, similar and collateral acts to prove intent are not altogether harmonious, but the weight of authority, as well as reason, favors the admission of such evidence, provided the subsequent act is not too remote in time from the one charged. ''In a prosecution for receiving stolen goods, evidence that defendant received other stolen property from the same thief concerned in the delivery in the offense charged, 12 days subsequent to the time of the alleged offense, was admissible to show guilty knowledge or intent.'' *Jeffries* v. *United States,* (Ind. T.), 103 S. W. 761 .

Complaint is made that the purpose for which this evidence was admitted was not explained to the jury by the court. A sufficient reply to this complaint is, that the court was not requested to do so. It is not error to hear evidence if it is admissible for any purpose, and the party who would limit it to a particular purpose should ask for an instruction to that effect. *Perkins* v. *Traction Co.,* 81 W. Va. 782.

The theft of the property was discovered the same evening

it was stolen, and officer Fleming notified defendant, who maintained a billiard table, to keep a lookout for the stolen billiard balls; that the thief might bring them to him. The State's witnesses had testified that they had sold them to Burns Cottrill in the toilet room of defendant's apartments, and when Cottrill was being examined as witness for defendant he was asked: "What occurred between you and Baker when you delivered to him the poker chips and the billiard balls, cards and supplies?" The attorney for the defense stated that he expected the witness to state that defendant said: "Burns, this stuff might be stolen—Lieutenant Fleming told me a little while ago that someone had broken into Germania and stolen some billiard balls and these might be the property; that he better see the officers and let them know about it." This testimony was excluded on the ground that it was a self-serving declaration. But it is so closely connected with the transaction between the thieves and Burns Cottrill, concerning which the State's witness had testified, as to be a part of the *res gestae,* and it should have been admitted. It matters not that the declaration was evidence in his favor. Evidence of the conduct and declarations of witness Cottrill concerning the same transaction had been received as evidence against accused, and evidence of what he himself said and did at the same time, or so near thereto as to constitute a part of the *res gestae,* should likewise have been admitted, even though it was in his favor and had the appearance of a self serving declaration.

"On a trial for receiving stolen property knowing the same to have been stolen, it is competent for the defense to show by the accused, he being a witness in his own behalf, when, from whom, how, and under what circumstances, he received it, and what was done and said at the time in connection with the receipt of it by himself; such facts being part of the *res gestae* to be submitted as evidence, and weighed by the jury." *State v. Bethel,* 97 N. C. 459, 1 S. E. 551.

"Declarations of the accused, however, are admissible in his favor if they formed a part of a conversation proved by the state, or if they are part of the *res gestae.*" 12 Cyc. 427, and numerous cases cited in note 40; and *State v. Goldstrohm,* decided at the present term.

"It is not, however, necessary that such declarations, to be part of the *res gestae*, should be precisely concurrent with the act under trial; it is enough if they spring from it and are made under circumstances which preclude the idea of design." 2 Wharton's Crim. Evi., Sec. 691. Underhill's Crim. Evi., (2nd ed.), Sec. 302; *State* v. *Abbott*, 8 W. Va. 841; *State* v. *Jacobs*, (Mo. App.), 113 S. W. 244; *Mitchell* v. *Territory*, (Okla.), 54 Pac. 782; *Smith* v. *Territory*, (Okla.), 79 Pac. 214; *State* v. *White*, 77 Vt. 241, 59 Atl. 829. Generally the rejection of such evidence will be presumed to have prejudiced the accused. Authorities above cited. Error will be presumed prejudicial unless it plainly appears that it could not have affected the result. 1 Encyc. Dig. Va. & W. Va. Cases 585.

The court made an order excluding all witnesses from the court room during the taking of testimony, and C. Percy Foley, a witness for defendant, was not permitted to testify, because he had remained in the court room during the examination of other witnesses in violation of the order, and this is assigned as error. Under the rules of practice in this state we cannot consider this assignment for two reasons: (1) No exception was taken to the court's ruling, and (2) it does not appear that the witness' testimony would have been material. It is proper to state, however, that the violation by a witness of such order, whether accidental or by design, does not render him incompetent, but only affects his credibility. *State* v. *Stewart*, 63 W. Va. 597, and *Gregg* v. *State*, 3 W. Va. 705. In some jurisdictions, however, the trial court may, in its discretion, exclude the witness. 12 Cyc. 547.

When testifying in his own behalf, defendant was not allowed to state what he said to Burns Cottrill when the latter first exhibited to him the stolen property which he had bought just previously. The statement defendant then made was a part of the *res gestae* and should have been admitted, for the reasons stated in considering the assignment relating to the exclusion of witness Burns Cottrill's testimony to prove the same or similar statements by defendant.

Charles Rudy, a witness for the State, testified that he was with Gilman and Peebles when they met defendant at Stout & Dils garage; that they stopped there with him, "and didn't want (him) to hear what they were talking about." Being asked how he knew they didn't, he said "they," meaning the two boys, "told him to stand over by one side, they wanted to talk secretly;" but he did not know whether Mon Baker, the defendant, told him that or not, nor did he know whether Baker heard the remark the other boys made to him, that Baker was half the length of the building from them at the time the remark was made. It not appearing that Baker heard or was near enough to hear the remark made to the witness, it is insisted that the court erred in not sustaining defendant's motion to exclude the evidence. We do not think so. A *prima facie* conspiracy was established between Gilman and Peebles and Baker, as well as between the latter and Cottrill, and evidence of their declarations was admissible against Baker for the same reason the evidence of Cottrill's declaration against him was admitted. It matters not that Gilman and Peebles were not jointly indicted with him. The declaration, as the evidence tends to show, was made in furtherance of a common design or plan in which all three were interested. 2 Wharton's Crim. Evi., (10th ed.), Sec. 700; Underhill's Crim. Evi., Sec. 492; *Slaughter* v. *State,* 113 Ga. 284, 84 Am. St. 242; *Graff* v. *People,* 208 Ill. 312, 70 N. E. 299; *State* v. *Wackernagle,* 118, Ia. 12, 91 N. W. 761; and *State* v. *Wilson,* 72 Minn. 522, 75 N. W. 715.

The judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded for new trial.*