Argued March 25; reversed April 28, 1936 .

# STATE *v.* STACEY
## (56 P. (2d) 1152)

450

*C. W. Robison* and *Leland B. Shaw,* both of Portland, for appellant.

*Maurice Tarshis* and *Joe P. Price,* Deputy District Attorneys, both of Portland (James R. Bain, District Attorney, of Portland, on the brief), for the state.

BAILEY, J. The defendant, William Stacey, and one Louis LaPove were on March 1, 1935, jointly indicted of the crime of receiving stolen property, charged to have been committed on January 24 of that year, the charging part of the indictment being that said Stacey and LaPove did on that date in Multnomah county unlawfully and feloniously "buy, receive, have and conceal certain personal property, to wit: two ladies' coats, all being the personal property of R. M. Gray". Prior to the trial of the defendant Stacey, LaPove pleaded guilty and was used as a witness on behalf of the state. From a judgment of conviction the defendant has appealed.

Early in the morning of October 2, 1934, the store of R. M. Gray in Portland was broken into and some 26 women's coats valued at over $700 were stolen. One of these, gray in color, was a coat which had been sold by Mr. Gray for $50 to one of his customers some 14 months before the theft, and at the time of the theft was in the store, where it had been relined and

was awaiting delivery to the owner. When the coat could not be returned to the owner, Mr. Gray settled with her by paying $20, in addition to bearing the charge of $7.50, for relining the coat and another charge of 65 cents for cleaning it.

The other coat referred to in the indictment and stolen from the Gray store was a model used for the purpose of procuring orders for similar coats. It had been in the store for some time but was of unpopular color and Mr. Gray had taken orders on it for similar coats in different colors. Coats ordered from this model sold for $25. At the time of the theft the model had been placed on sale, marked at $15.

The defendant Stacey operated a general grocery and meat market at the corner of Mississippi avenue and Fremont street in Portland. In one end of the building where the store was conducted there was a garage approximately 20 feet wide and 40 feet long, in which were stored three or four automobiles and trucks. The doors of the garage were flush with the sidewalk and were kept open most of the day.

Louis LaPove operated a filling station across the street from the Stacey store. On the same lot with the filling station was a one-room building in which LaPove and his wife made their home. Both LaPove and his wife were well acquainted with the defendant and had known him for about a year and a half. They purchased their provisions at the defendant's store and he in turn bought gasoline at their filling station.

During the early part of November, 1934, the defendant came to the filling station and inquired of LaPove whether he would be interested in purchasing a coat for Mrs. LaPove, stating that he had some coats

in his garage. At the suggestion of her husband, Mrs. LaPove went to the garage, where she found some eight or ten women's coats lying on a box. Shortly after she arrived there the defendant appeared, and was advised by Mrs. LaPove that she would like two of the coats, one blue-gray in color and the other gray. She left without taking any of the coats with her, and shortly thereafter the defendant appeared at the filling station with the gray coat chosen by Mrs. LaPove, which he turned over to her husband upon the understanding that defendant was to be paid $7 for it. The defendant thereupon sold the other coat to LaPove and it was delivered the next day, when LaPove paid to defendant $12, the price of the two coats. These were the coats mentioned in the indictment.

Each of the above coats while in possession of R. M. Gray had borne a silk label in the back, below the collar, in which the name "R. M. Gray" was woven. These labels had been removed prior to the time when the coats were sold to LaPove.

On the same day as the robbery at the Gray store, the clothing store of M. & H. H. Sichel in Portland was broken into and about $700 worth of men's clothing taken. One of the garments stolen was a man's overcoat retailing at $37.50, which prior to the theft had borne two labels, one the N R A emblem and the other the name of the clothiers. This coat, with the labels then removed, about three or four weeks after the sale of the women's coats to Mrs. LaPove, was sold by the defendant to LaPove for $10—$5 in cash and $5 in trade.

After the LaPoves bought these coats, Mrs. LaPove wore the heavier of the two coats she had selected, and LaPove wore the overcoat.

On or about January 23, 1935, the defendant came to the filling station and said to LaPove, "There is a search warrant out for you", and "You have got to get rid of the clothes". A short time later LaPove went to his dwelling and hid the man's overcoat under the mattress of his bed. On the following day a search was made of LaPove's premises and most of the clothing of LaPove and his wife was taken to the police station, including the two women's coats, which were hanging in the clothes closet with the doors open, in plain view, and the overcoat, which was found where hidden by LaPove.

LaPove and his wife, together with Stacey, were arrested, but after some questioning Mrs. LaPove was discharged and all the clothing, except the three articles above mentioned, was returned to her and her husband.

After Mrs. LaPove returned home from the police station, Stacey came to her and asked what she had told the police about the case. She answered, "I told him everything belongs to me". A day or two later Stacey called on Louis LaPove and said to him: "Well, I have seen your statement which you signed at the police station; you are in pretty bad; I tell you what I will do. . . . You know, I have got a lot of money; I will fight the case; I will deny everything; whatever you say I will deny, so if I lose this case I will take it to the supreme court; if you want to go to jail, I will put a man in your place at the service station and I will pay your wife so much a week." To this LaPove answered, "No, I don't think I should do that; I think I am still innocent because you sold me those coats".

Later LaPove appeared before the grand jury, and when Stacey heard of this he asked him: "How come

you went before the grand jury? Why didn't you tell me? Who made you go?" When advised by LaPove that the latter had appeared voluntarily, Stacey remarked, "Well, whatever you told them wouldn't hurt me because I will just deny everything what you said".

Stacey told the officer who arrested him that he would talk if some deal would be made with him. The officer further testified: "The deal he didn't mention; he said he would like to receive some offer from me, referring to leniency, if he would tell me what he knew."

Mr. Gray testified that the model coat would probably be offered for sale by one peddling it, for $10, or even at 50 per cent of the price which had been marked on it. He also testified that he placed the value of the customer's coat which had been relined at $28.15, which included the cost of repairing and cleaning and the $20 that he had paid to the customer when he could not return the coat to her; but that if it were sold as a second-hand garment it would have "a very small retail value", possibly as little as $5.

The man's overcoat, according to the testimony, was of heavy material, made for colder weather than that of Oregon, and would be of limited demand here, except perhaps by elderly customers who might require additional warmth.

At the trial of defendant no evidence was introduced showing who had broken into either store or stolen any of the coats, or as to how or when Stacey came into possession of the coats. Nor does the evidence show that he had the man's overcoat in his possession at or before the time when he sold the women's coats. Stacey denied ever having had possession of any of these three garments and further denied all the alleged

conversations between himself, the LaPoves and the arresting officer.

One of the assignments of error is that the circuit court erred in denying the defendant's motion for a directed verdict of acquittal. The statute under which the defendant was indicted is § 14-329, Oregon Code 1930, providing as follows:

"If any person shall buy, receive, or conceal, or attempt to conceal, any stolen money or property, knowing or having good reason to believe the same to be stolen, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than six months nor more than five years, or by imprisonment in the county jail not less than three months nor more than one year, or by fine not less than $50 nor more than $500."

In prosecutions for receiving stolen goods guilty knowledge is the gravamen or substance of the offense. Without again referring to the testimony, we hold that there is sufficient evidence in the record, if Mrs. LaPove's testimony was not that of an accomplice and the jury so found, from which the jury could find or infer that the defendant Stacey had knowledge, before receiving them, that the two women's coats had been stolen, or that he concealed or attempted to conceal them with knowledge of their having been stolen: *State v. Savan,* 148 Or. 423 (36 P. (2d) 594, 96 A. L. R. 497), and authorities therein cited.

An accomplice has been defined as "a person who knowingly, voluntarily and with common intent with the principal offender, unites in the commission of a crime". It has also been said that "one of the tests of an accomplice is that if the partaker can be indicted and punished for the crime for which the accused is being tried, he is an accomplice; otherwise not": *State*

*v. Turnbow*, 99 Or. 270 (193 P. 485, 195 P. 569); *State v. Walters,* 105 Or. 662 (209 P. 349). In the case at bar the facts relating to whether Mrs. LaPove was or was not an accomplice were in dispute, and the question was therefore one to be submitted to the jury: *State v. Weston,* 109 Or. 19, 32 (219 P. 180); *State v. Edlund,* 81 Or. 614 (160 P. 534). The court did submit that question to the jury, under proper instructions; and its action in that respect was not erroneous.

Exception was taken by the defendant to the following instruction given by the court:

"The law provides that the testimony of an accomplice ought to be viewed with distrust. However, in this connection, I will state that you should approach the testimony of an accomplice with the view of distrust, but, after all, you folks are the ones to determine the credibility of that witness. You take that fact into consideration, that he or she is an accomplice, and then consider the interest, if any, that they may have in the case and these other matters which I have just mentioned, their demeanor upon the witness stand, probability of their statements and all of those matters; and after doing that, then it is for you to decide whether that witness is or is not telling the truth. In other words, the credibility of an accomplice is finally for the determination of the jury, the same as any other witness in the case excepting that the law provides that in approaching the testimony of an accomplice that you ought to do that with distrust, but considering that and all of these other facts, then it is for you to say whether or not the accomplice is or is not telling the truth."

The defendant also excepted to the refusal of the court to give, in the language used by the defendant, this instruction:

"You are also instructed that in view of the fact that the co-defendant, Louis LaPove, is an accomplice to

the crime charged in the indictment, his testimony ought to be viewed by you with distrust."

It is the defendant's contention that the instruction given by the court modifies and virtually annuls the effect of § 9-2001, Oregon Code 1930, which, as far as material here, is in the following language:

"The jury, subject to the control of the court, in cases specified in this code, are the judges of the effect or value of evidence addressed to them, except when it is declared to be conclusive. They are, however, to be instructed by the court on all proper occasions, . . .

"4. That the testimony of an accomplice ought to be viewed with distrust, and the oral admission of a party with caution."

In support of this contention the defendant cites and relies upon *Kelley v. Joslin*, 123 Or. 253 (261 P. 413); *Herman v. East Side Logging Co.*, 135 Or. 279 (295 P. 960); and *Gray v. Wassell*, 138 Or. 274 (4 P. (2d) 625). In *Kelley v. Joslin* the court held that an instruction to the effect that "the evidence should be sufficient to satisfy your minds by a clear preponderance thereof" was erroneous, as the statute requires only a preponderance. It was observed by the court in *Herman v. East Side Logging Co.*: "It must be borne in mind that § 9-2001, Oregon Code 1930, § 868 Or. L., declares the rule governing instructions to juries; and this court is without authority to amend it." In *Gray v. Wassell* the court, after referring to sections of the code which require the party having the affirmative of the issue to produce evidence to prove it, and that "the findings shall be according to the preponderance of the evidence", stated: "The legislature of the state enacted into law these plain provisions of the code. They need no construction and this court has no power to change or modify them." None of these cited cases is here applicable.

■■■ The instruction which was given by the court in the case at bar was not, in effect, by change, amendment, enlargement or modification, different from that required by the code to be given by the court, directing the jury to view with distrust the testimony of an accomplice. The charge as given merely explained to the jury its duty with reference to such testimony: *Underhill's Criminal Evidence*, (4th Ed.), § 156. No error was committed in giving this instruction, or in refusing to give the one requested.

The fourth and last assignment of error urged by the appellant is based on the admission in evidence of the man's overcoat as an exhibit, and the admission of testimony relative to the possession and sale of it by the defendant, after it was shown that the overcoat had been stolen. As hereinbefore stated, the record is silent as to who stole either the overcoat or the women's coats, or how any of the coats came into the possession of the defendant.

The only testimony regarding the defendant's connection in any way with the overcoat was that given by Louis LaPove, who, as the court instructed the jury, was an accomplice. According to the testimony of LaPove, the first knowledge he had of defendant's possession of this coat was when he bought it from defendant, some three or four weeks after the latter sold him the two women's coats mentioned in the indictment. The defendant, as above pointed out, denied ever having had possession of any of the coats or selling them to LaPove, and denied all the conversations attributed to him by the witnesses for the state.

The ground of appellant's objection to evidence concerning the overcoat is that it related to an entirely

different crime, not in any way involved in, or connected with, the commission of the crime for which he was being tried. The state, however, contended in the circuit court, and urges here, that this was competent evidence, under the authority of *State v. Goldstein,* 111 Or. 221 (224 P. 1087), and directs our attention to that part of the opinion therein reading as follows:

"The two thieves who sold the goods to the defendant testified to having stolen these goods from the various parties who identified them, and to having sold them to Alex Goldstein under a general arrangement that he would take whatever they brought to him and act as a fence for them in case there was any trouble. *While evidence of other crimes, as a rule, is not admissible, there is an exception in the case of persons indicted for receiving stolen property; the rule being that such testimony is admissible as bearing upon the question of intent in purchasing the property.* This is especially true where the evidence tends to support the contention that there was a fixed plan to receive stolen property with knowledge that it had been feloniously obtained. See the following authorities: State v. Start, 65 Or. 178, 184 (132 P. 512, 46 L. R. A. (N. S.) 266); People v. Doty, 175 N. Y. 164 (67 N. E. 303); Copperman v. People, 56 N. Y. 591; State v. Feuerhaken, 96 Iowa 299 (65 N. W. 299); State v. Ward, 49 Conn. 429; Shriedley v. State, 23 Ohio St. 130; Devoto v. Commonwealth, 3 Met. (Ky.) 417; State v. Habib, 18 R. I. 558 (30 Atl. 462); Harwell v. State, 22 Tex. App. 251 (2 S. W. 606); Kilrow v. Commonwealth, 89 Pa. St. 480." [Italics supplied.]

Based upon the statement above set out in italics, the prosecution maintains that this evidence was admissible, while, on the other hand, the defendant insists that the exception noted must be taken in connection with the facts in that case and, when so read, the decision therein is not authority for the admission of evidence concerning another crime not shown to be con-

nected in any way with the offense for which the defendant is on trial. The defendant further points out that in the Goldstein case the goods for the possession of which Goldstein was being tried had been sold to that defendant under a general arrangement between him and the one from whom he acquired possession.

None of the cases cited by this court in the Goldstein case involved facts similar to those here before us. In many of the cases there cited there was an existing arrangement or fixed plan whereby the accused was receiving stolen property. In several other of the cases the evidence showed that the stolen property had been received by the accused from the same individual. In most, if not all, of the cases, the defendant did not deny possession of the property. Not in any of the authorities cited was there involved an attempt, as in the instant case, to show that the defendant, several weeks after selling stolen property, had in his possession other stolen property not in any way connected with that for the unlawful receiving of which he was indicted. The opinion in the Goldstein case must be read in the light of the facts there involved and can not be considered as authority supporting the admissibility of the overcoat in evidence.

Numerous other cases are referred to by the prosecution in support of its contention that the testimony regarding the overcoat was competent evidence. We shall briefly review them:

In *State v. Boyd*, 195 Iowa 1091 (191 N. W. 84), the state's testimony was to the effect that the defendant had arranged with a young man named Hoskinson to "engage in the business of breaking into box cars containing shipments of merchandise, and delivering

articles taken from these cars to the defendant's store", and that the defendant was to pay Hoskinson one-half the wholesale price for any articles so delivered to him. Hoskinson thereupon formed a partnership with one Worley, who had previously had experience in this line, and the two proceeded to carry out the plans suggested by Boyd. The defendant in that case contended that the goods were purchased from Hoskinson without any knowledge that they had been stolen. Objection was made to the admission of testimony relative to the receipt of stolen goods by Boyd subsequent to the time charged in the indictment, which objection was overruled and the ruling thereon upheld on appeal.

In *State v. Zeman*, 63 Utah 422 (226 P. 465), evidence of other stolen property found in the possession of the accused at the time he was shown to have possession of the property described in the indictment was held competent.

The court in *Mehlman v. State*, 92 Tex. Cr. 557 (244 S. W. 602), observed:

"The same boys, both prior and subsequent to the sale of Coleman's goods to appellant, had sold him other stolen property. The transactions were so nearly contemporaneous in time with the one under present consideration that we believe them to have been admissible. * * * Even though the reception of the stolen property in the instant case was the first act of appellant in buying property from Winn and Jones, we do not believe it would have excluded the admission of subsequent acts of receiving stolen property by him from the same parties, if they were sufficiently contemporaneous to make them otherwise admissible."

In *State v. Park*, 322 Mo. 69 (16 S. W. (2d) 30), evidence was introduced showing that the defendant

had on numerous occasions, under agreement with the thieves, purchased from them stolen harnesses. Some of the harnesses were sold to the defendant prior, and others subsequent, to the time named in the indictment, and the court held that the evidence of subsequent sales, under the facts shown, was admissible.

The defendant in the case of *State v. Baker*, 84 W. Va. 151 (99 S. E. 252), objected to the introduction of evidence of the sale of stolen goods to him subsequent to the offense charged in the indictment. There the same boys who had stolen and sold to him the goods described in the indictment broke into a dwelling house and stole some whisky, which they sold to the defendant. The court held that this evidence was admissible as tending to prove guilty intent on the part of the accused.

The court in *Heglin v. State,* 56 Okl. Cr. 364. (40 P. (2d) 41), in commenting upon an objection made by the defendant, said:

"The evidence complained of was that other stolen property had been received by defendant and was in his possession at the place where the property alleged to have been received was found. This evidence was admissible on the question of whether or not defendant received this particular stolen property with the guilty knowledge that it had been stolen when he received it.

"This court has held that contemporaneous possession of other stolen property is admissible in a larceny case:" citing authorities.

"The precise question has never been passed on by this court, but the courts of other states have held that possession of other stolen goods is admissible as tending to establish that the defendant received with guilty knowledge the goods specified in the indict-

ment or information, and that it is immaterial whether the other possession occurred before or after the possession charged:'' citing several cases.

In all the authorities cited in support of the paragraph last above quoted it was shown that the same thief had sold to the accused the property which he was charged with receiving, as well as the additional stolen articles in his possession. In some instances the sales to the accused were made prior, as well as subsequent, to the one involved in the indictment. In all these cases it might be said that there was a fixed plan or arrangement between the defendant and the thief who stole the property.

The only other authority cited by the state in the case before us, in support of admission of the disputed evidence, is 2 Wharton's Criminal Law (12th Ed.), § 1231, p. 1546, the only part of which here applying is the following statement: ''To show a guilty knowledge, other instances of receiving may be proved; even though they be the subjects of other indictments antecedent to the receiving in question. But where there is a marked difference in time and character in the receptions, one can not be received to prove the other.''

There are found in the opinions of the various courts and in the texts general statements to the effect that evidence of defendant having in his possession other stolen property either prior or subsequent to the possession of that with which he is charged, is admissible. Where enough of the evidence is set out to indicate the facts upon which the decision in any particular case was based, it is apparent that it was predicated on one or more of the following elements:

(1) the defendant admitted possession of the stolen article as charged and claimed that he had no knowledge that it was stolen; (2) the goods forming the basis of the indictment were found in his possession with the other stolen property; (3) the same individual who sold or delivered the stolen property described in the indictment also sold or delivered to him other stolen property concerning which evidence was admitted; or (4) there was a fixed plan whereby the accused was to act as a "fence" for the thieves. In all the cases the commission of other similar crimes by the defendant was proved by evidence other than the uncorroborated testimony of an accomplice, where the law required corroboration of an accomplice in order to convict a defendant. None of the foregoing elements is present in this case, as clearly appears from the facts hereinabove set forth.

In *State v. O'Donnell*, 36 Or. 222 (61 P. 892), the court said: "The rule that evidence of crimes other than that charged in the indictment is inadmissible is subject to a few exceptions, speaking of which, Mr. Underhill, in his valuable work on Criminal Evidence (section 87), says: 'These exceptions are carefully limited and guarded by the courts, and their number should not be increased.'" The court then discussed in detail each one of the five exceptions mentioned by Mr. Underhill. None of those exceptions, however, can be applied to the facts in the instant case. The court in that opinion further said:

" 'The general rule', says Mr. Justice Bean, in State v. Baker, 23 Or. 441 (32 P. 161), 'is unquestioned that evidence of a distinct crime unconnected with that laid in the indictment can not be given in evidence against the prisoner. Such evidence tends to mislead the jury, creates a prejudice against the pris-

oner, and requires him to answer a charge for the defense of which he is not supposed to have made preparation.''

■ The exceptions to the rule prohibiting introduction of evidence of crimes other than the one charged in the indictment should not, under the facts in this case, be extended to include evidence of such unconnected crimes where proof of the commission thereof was limited to the uncorroborated testimony of an accomplice.

■ The testimony regarding the theft of the man's overcoat, its sale to LaPove and its concealment by LaPove, was therefore improperly received, and the admission thereof was highly prejudicial error. On that ground alone, the judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

CAMPBELL, C. J., and BEAN and RAND, JJ., concur.