Argued September 16, affirmed November 14, 1969

STATE OF OREGON, *Respondent, v.*
CARROLL EUGENE KIBLER,
*Appellant.*

461 P. 2d 72

*D. L. Hoots,* Klamath Falls, argued the cause for appellant. On the briefs were Ramirez & Hoots, Klamath Falls.

*Michael L. Brant,* Deputy District Attorney, Klamath Falls, argued the cause for respondent. On the

brief were Sam A. McKeen, District Attorney, and Harold M. Sliger, Klamath Falls.

FORT, J.

The defendant was indicted, tried and convicted of the crime of concealing stolen property. He appeals and assigns three errors. We will consider them in the order assigned. To understand them, a summary of the evidence is necessary.

The defendant was engaged in the business of buying and selling green salted hides. He dealt with a number of both buyers and sellers over a wide geographical area. He was a small operator with no set place of business apart from his residence in Klamath Falls. He owned and generally used a pickup truck in his business, but upon occasion would rent a larger truck.

T. P Packing Co. operated a meat packing business in Klamath Falls. During its butchering process the hides were removed from the carcasses. Each was then salted and piled in open, unlocked sheds on the plant premises. Ultimately the hides were sold to hide buyers. Its hides bore the brand of the T P Packing Co. The company never sold any hides to the defendant, nor transacted any other business with him. All of its hides were sold to buyers in San Francisco. None of those sold remained in the Klamath Falls area. The T P Packing Co. butchered all animals bearing its brand.

Sales of the stored hides were usually made by the T P Packing Co. at about three-month intervals, depending upon the market. One such sale was had in July 1967 and the next about October 15. Hides were

accumulated in the open sheds between these dates. When a tally of the stored hides was taken for the October sale it was discovered that 1,660 hides were missing.

During this period of time the defendant, either alone or with others, sold and delivered several loads of hides to Southern Oregon Tallow Co. at Eagle Point in Jackson County and to Frontier Leather Co., Inc., Sherwood, Washington County. He received payment on over 20 loads from these two sources during the period May through October. The hides sold by the defendant appeared to come from more than one source. Among them were identified several hundred bearing the T P Packing Co. brand.

About the middle of October the defendant, at about midnight one night, dumped 44 salted hides off at the Klamath County residence of one Westmoreland. These, after defendant's arrest, were dumped by Westmoreland into a canal in Klamath County. Subsequently they were recovered by police. All bore the T P Packing Co. brand.

On September 12 defendant and one Hawkins took a truckload of hides furnished by the defendant to Frontier Leather Co., Inc., at Sherwood. They were paid for these and split the proceeds. Among these hides were a number bearing the T P Packing Co. brand.

The indictment charged that the crime was committed on or about August 8. From the beginning of the trial, defendant sought to compel the state to elect a date, upon the ground he wished to establish an alibi. At the conclusion of its case in chief the state selected September 12. The court at the appropriate time correctly instructed the jury that the state was required

to prove that the crime of concealment, if any, was committed on that date. *State v. Bauer,* 183 Or 481, 193 P2d 999 (1948).

The first assignment charges error because the court did not require the state to elect a specific date prior to the conclusion of its case in chief.

■ Relevant to the determination of any such contention are such matters as the nature of the crime charged, the defense sought to be asserted, the kinds of evidence necessarily employed to establish the material elements of the charge, and the degree of reliance which the state fairly places upon circumstantial evidence.

The Supreme Court has stated the general rule:

"* * * No statute of this state prescribes the time when an election must be made. We are aware of no reason which demands a holding that the election in all cases must be made at this or that stage of the case. It appears to us that the administration of justice will be better served if the rule governing election is flexible so that the state will not be forced to make a choice when it cannot intelligently do so, but which will afford the defendant sufficient time, after the choice has been made, to defend himself properly." *State of Oregon v. Lee,* 202 Or 592, 607, 276 P2d 946 (1954).

ORS 132.610 provides:

"The precise time at which the crime was committed need not be stated in the indictment, but it may be alleged to have been committed at any time before the finding thereof and within the time in which an action may be commenced therefor, except where the time is a material ingredient in the crime."

■ Here the defendant concedes that generally, time

is an immaterial element in criminal cases, so long as there is compliance with the statute of limitations. He asserts, however, that when the defense is alibi it becomes material. The charging date was August 8. The proof covered a period running in excess of 60 days. The state elected September 12 at the conclusion of its case in chief. In fact the defendant offered no evidence of alibi concerning that or any other date. He did not himself take the stand. After the state elected the date of September 12, he was granted such additional time as he requested for the purpose of presenting his case in chief.

Weighing the evidence of the case in chief in the light of the factors above outlined, we conclude there was no abuse of discretion by the trial court in not requiring the state to select a date prior to the conclusion of the state's case in chief.

The second assignment of error is that in view of the election by the state of September 12 as the date of the crime, it was error to have allowed the state to offer evidence of other crimes committed after that date.

█ The general rule applicable to a case charging concealment of stolen property is that evidence of defendant's possession and concealment of other stolen property subsequent to the date of the alleged crime is properly admitted only where such evidence has a logical connection with the crime charged for the purpose of showing defendant's guilty knowledge. *State v. Albert,* 159 Or 667, 82 P2d 689 (1938); *State v. Stacey,* 153 Or 449, 56 P2d 1152 (1936); *State v. Goldstein et al,* 111 Or 221, 224 P 1087 (1924).

In this case a crucial question for the jury was not only whether or not the defendant knew or had

good reason to believe the hides bearing the T P Packing Co. brand were stolen, but also whether or not defendant in fact knew that he was in possession of and engaged in an act of concealing such a hide on the date elected.

■■ Since the general rule is that

"* * * [M]ere possession of recently stolen goods is not sufficient to prove guilty knowledge * * *." *State v. Long*, 243 Or 561, 565, 415 P2d 171 (1966),

it follows that a mere act of concealment of recently stolen goods likewise is not sufficient to prove the requisite guilty knowledge. Thus the state had a right to show both prior and subsequent acts of possession, concealment and sale by the defendant of hides which included large numbers bearing the T P Packing Co. brand, provided, as here, they were reasonably related in time to the date elected by the state. We hold that here such evidence did have logical connection with the crime charged. Furthermore, the jury was expressly charged,

"* * * [T]he defendant could not be found guilty of any other concealment. The State is bound by the election to proceed under the specific act elected.
"Therefore, it is incumbant [sic] upon you to disregard evidence of other sales and transactions and acts by the defendant, except as they may pertain to his intent or his knowledge, that the goods, were in fact stolen * * *."

The evidence was properly received. *State v. Bauer*, supra.

The final assignment of error is that the defendant was denied a fair trial because he was preju-

diced by the use of aliases in the indictment. The indictment charged "CARROLL EUGENE KIBLER, also known as CHARLES KEBLER, also known as KARROL KEIBLER" with the crime.

At the time of his arraignment, as required by ORS 135.340 the defendant stated that his true name was Carroll Eugene Kibler.

■ The general rule concerning the use of aliases is set forth in 42 CJS 1017, Indictments and Informations § 127:

> "Where there is doubt as to which of several names is the one by which the accused usually is designated, all of them may all be alleged under an alias dictus."

This rule applies to both the Christian name and to the surname. *Id.* at 1018.

Defendant contends that here the state sought by use of the aliases to embarrass and humiliate him and to bring him into disrepute with the jury. He concedes, however, that had he chosen to take the stand himself, he could have been impeached by prior convictions, and, if the convictions were under a different name, this could have been brought out on cross-examination or other extrinsic evidence. Since, however, defendant did not take the stand, he claims the use of the aliases in the indictment nevertheless prejudiced him here. The indictment of course was read to the jury as a part of the charge.

It has been well stated that

> "* * * [T]he string of aliases may be so arranged as to carry the implication that the defendant belongs to the so-called criminal class and thus half convict him as soon as the indictment

is disclosed to the jury." *D'Allessandro v. United States,* 90 F2d 640, 641 (3d Cir 1937).

The important question, however, is whether, upon the evidence here, the use was both improper and prejudicial.

■ During the trial, the evidence identified the defendant variously as Carroll Kibler, Gene, Mr. Gene, Harry, Carroll E. Kibler and Carol Kibler. It is noteworthy that each of the surnames alleged were far more consistent with the doctrine of *idem sonans,* as are Carroll and Karrol, than with an effort to identify the defendant as a member of "the so-called criminal class."

In the absence of the jury, the state, to show its good faith, stated that had the defendant taken the stand it would have offered impeaching evidence showing that the defendant had committed other crimes under the names charged. This was not disputed by the defendant.

We conclude that under the circumstances of this record the defendant was not unfairly or improperly prejudiced by the employment of the aliases used in the indictment.

The judgment is affirmed.