## Wytheville.

### OLIVER v. THE COMMONWEALTH.

July 19th, 1883.

(Absent, *Fauntleroy, J.*)

1. CRIMINAL PROCEEDINGS—*Evidence—Approvers.*—The doctrine of "*approvement*" was never the law of this state. Case at bar does not come within that doctrine. See *Byrd's Case,* 2 Va. Ca. 492.

2. IDEM—*Idem—Accomplices.*—An accomplice, not convicted of an infamous offence, is ordinarily a competent witness; and no person, not jointly tried with defendant, is incompetent by reason of interest. Code 1873, ch. 195, § 21.

3. IDEM—*Idem—Infants.*—An infant under fourteen is competent, if he understands the nature of an oath. At fourteen he is presumed to understand it. Not so if under fourteen.

4. IDEM—*Idem—Witness—Examination.*—Where the court has once decided in favor of the witness' competency, he cannot be examined before the jury touching his competency.

5. IDEM—*Idem—Principal—Accessory.*—Any evidence is admissible which tends to show the relations of the principal with the alleged accessory.

6. IDEM—*Idem—Conspirators—Post-statements.*—Though conspiracy has been proved, statements of a conspirator, made *after* the object of the conspiracy is accomplished, are inadmissible to criminate his co-conspirator.

Error to judgment of circuit court of Bedford county, rendered March 2d, 1883, affirming judgment of county court of said county, sentencing John W. Oliver to imprisonment in the pententiary for a term of three years, as accessory before the fact to the crime of feloniously burning a depot of the Richmond and Alleghany Railroad Company, in said county.

The evidence tended to show that Oliver employed two boys, aged respectively, nine and fourteen years, with whom he had been intimate, to burn said depot, against the keeper whereof he had a grudge. After the younger had been arrested, he told the officer that Oliver had employed him and the older boy to burn the depot, and that they did so. At a former trial each had been examined by the court touching his knowledge of the obligation of an oath, and the court being satisfied as to their competency, admitted them as witnesses against Oliver. The jury did not agree on a verdict, and were discharged. At a subsequent trial during the same term, the prisoner's counsel moved the court to reëxamine these witnesses as to their knowledge of the obligation. of an oath, which the court declined to do. He then moved to exclude them (1.) Because they showed themselves to be "approvers," and (2.) Because they showed themselves to be the principal felons, and charged the prisoner as accessory before the fact, and (3.) Because their statements criminating the prisoner, made after the object of the conspiracy was ended, were evidence only against themselves, which motion was also overruled.

*E. P. Goggin,* for the prisoner.

*Attorney-General F. S. Blair,* for the commonwealth.

LEWIS, P., delivered the opinion of the court.

The first question to be determined (and which is the subject of the first, second, and fourth bills of exception) relates ·to the competency as witnesses of John Williams and Preston Matheny, the alleged principals in the felony charged in the indictment, and aged, respectively, nine and fourteen years. At the trial they were called and testified for the commonwealth. Their competency is denied by the plaintiff in error, on the ground of their confessed guilt of the felony charged, and because of their

want of understanding of the nature and moral obligation of an oath.

In support of the first objection, counsel rely, in part, on the statute, which provides that, "approvers shall not be admitted in any case." Code 1873, chapter one hundred and ninety-five, section eighteen. But no such question arises in the present case. The English doctrines relating to the admission of approvers seem never to have become incorporated into the laws of this state, and the ancient practice in England, which was confined to capital cases, has been long disused. 4 Bl. Comm. 330; 1 Bishop on Crim. Procedure, sec. 1072, *et seq.; Dabney's Case,* 1 Rob. Rep. 696. Ordinarily, an accomplice is a competent witness on the trial of his associate, provided he has not been previously sentenced and convicted of an infamous offence, which is not the case here. And by statute in Virginia his incompetency by reason of interest has been removed, unless jointly *tried* with his associate. Code 1873, chapter one hundred and ninety-five, section twenty-one.

It is an equally well settled rule of evidence that an infant under fourteen may be examined as a witness, provided he sufficiently appears to understand the nature and moral obligation of an oath; for competency depends not upon age but understanding. At the age of fourteen, every person is presumed to have common discretion and the necessary understanding of the obligation of an oath, until the contrary appears; but under that age it is not so presumed.

In this case, without stopping to review the evidence, it is sufficient to say that the competency of the witness Williams is satisfactorily established, and that sufficient evidence does not appear in the record to establish the incompetency of the witness Matheny. The testimony of both was, therefore, properly admitted by the county court.

The third bill of exceptions raises the question, whether a witness, whose competency has been affirmed by the court, may be examined before the jury touching his understanding of the

obligation of an oath.   The county court held such examination
to be inadmissible, and we think correctly.   It is for the court
to determine what *is* evidence, and for the jury to weigh it; and
the court having once decided in favor of the competency of a
witness, the decision cannot be indirectly reöpened by raising
questions before the jury, which, in effect, go to the competency of
the witness.   In the present case, the avowed object in the course
of examination sought to be pursued, was to affect, not the com-
petency, but the credibility, of the witness; but the questions
propounded relate properly to his competency and not to his
credibility, and were, therefore, rightly excluded.

The next question arises upon the fifth bill of exceptions,
which was taken to the action of the court in admitting, against
the objection of the prisoner, the testimony of the witness Rich-
ardson.   The witness testified that he had frequently seen the
boy, Williams, about the prisoner's place of business, which was
in the neighborhood of the depot; that he had seen him there
about ten days before the depot was burned, and near there on
the day it was burned.   The obvious object of the attorney for
the commonwealth in calling the witness was to show the con-
nection and relations existing between the prisoner and Wil-
liams, and in that view the testimony of the witness was admis-
sible evidence to go to the jury.

The subject of the sixth bill of exceptions is the action of the
court in admitting the testimony of the witness Pendleton.   The
witness was a police officer, who testified that when he arrested
Williams in Lynchburg, soon after the depot was burned, the
latter confessed to him that the prisoner had employed him (Wil-
liams) and Preston Matheny to burn the depot, and that they
did so.   The prisoner objected to the introduction of this testi-
mony, but the objection was overruled and the testimony admit-
ted.   In so doing we think the court plainly erred.   The testimony
was, doubtless, introduced for the purpose of corroborating the
accomplice, Williams, by showing that he had previously made
statements out of court similar to those made by him as a witness

in the case.   But the testimony was merely heresay, and there-
fore inadmissible, even though a previous conspiracy and combi-
nation had been proved between the prisoner and Williams; his
statements having been made *after* the commission of the offence
and *after* the object of the conspiracy had been accomplished.
*Hunter's Case*, 7 Gratt. 641; *Hayne's Case*, 28 Gratt. 942;
*Jones's Case*, 31 Gratt. 836.

The testimony being thus illegal and calculated to prejudice
the prisoner, the judgment must be reversed.   It is well settled
in Virginia that a judgment will not be reversed for the admis-
sion of improper testimony when it is plain that its introduction
could not possibly have prejudiced the defendant.   But if he may
have been so prejudiced, even though it be doubtful whether in
fact he was so or not, that is sufficient ground for reversing the
judgment.   *Payne's Case*, 31 Gratt. 855, and cases cited.

The questions raised by the seventh bill of exceptions were
waived by the counsel for the prisoner; and those raised by the
eighth and last, respecting the sufficiency of the evidence to
support the verdict, need not be considered; as for the error in-
dicated the judgment must be reversed and a new trial awarded.

The order is as follows:

This day came again, as well the attorney-general, on behalf of
the commonwealth, as the plaintiff in error by his counsel, and,
the court having maturely considered the transcript of the
record of the judgment aforesaid and the argument of counsel,
is of opinion, for reasons stated in writing and filed with the
record, that the said judgment of the circuit court, affirming the
judgment of the county court of Bedford county, is erroneous, in
that the said county court erred in not excluding from the jury
as evidence on the trial of the issue joined in this case the testi-
mony of the witness, J. D. Pendleton, set out in the sixth bill
of exceptions in the record, in response to the questions of the
attorney for the commonwealth also set out in said bill.   It is,

therefore, considered and ordered that for the error aforesaid, the said judgment of the circuit court be reversed and annulled. And this court now proceeding to enter such order as the said circuit court ought to have entered, it is further ordered, that the said judgment of the said county court be reversed and annulled, the verdict of the jury set aside, and that this case be remanded to the said county court for a new trial of the issue joined. Which is ordered to be certified to the said county court.

JUDGMENT REVERSED.