# CHARLESTON ·

## GAY v. GAY *et al.*

Submitted September 22, 1914.    Decided September 29, 1914.

1. APPEAL AND ERROR—*Trial—Instruction After Submission—Sufficiency of Objection.*

    If in the trial of an issue at law, and after submission of the case, the court gives to the jury an instruction good in form and substance, either *sua sponte* or at the request of the jury or of a party litigant, and there is only a general objection thereto, such action by the court will not constitute reversible error. (p. 802).

2. WILLS—*Issue Devisavit Vel Non—Instructions.*

    On an issue *devisavit vel non* under §32, ch. 77, Code, where a will containing several distinct items is attacked, both as a whole and as to some items thereof, on the grounds of undue influence and lack of testamental capacity, it is error to instruct the jury that, if any part of the paper is found "not to represent the intention of the testator and not to be his will", then, in effect, "the will as a whole is not the true and last will and testament of" the decedent. (p. 801).

3. TRIAL—*Instructions—Evidence.*

    It is error to give an instruction where there is no evidence to support it. (p. 803).

Appeal from Circuit Court, Pocahontas County.

Suit by Pat Gay against Sandy Gay and others. From a decree for complainant, defendants appeal.

*Reversed and remanded.*

*L. M. McClintic,* and *Mollohan, McClintic & Mathews,* for appellants.

*Price & McNeel,* for appellee.

LYNCH, JUDGE:

In a proceeding in equity attacking the validity of a paper writing dated May 13, 1910, purporting to be the last will and testament of J. C. Gay, deceased, a jury was impaneled pursuant to the provisions of §32, ch. 77, Code; the charge in the bill, denied by answer, being that at the date of the paper writing Gay did not have testamental capacity, and

was unduly influenced by the beneficiaries thereunder. The oath administered was to "well and truly ascertain whether any, and if any how much, of the paper writing" was "the will of J. C. Gay, deceased, and a true verdict render".

After some deliberation, the jury inquired whether "we had the authority to consider any proposition outside of the validity or nonvalidity of the will; we had contemplated changing an item or two"—to which the court responded only by reading to them the oath administered by the clerk. After further deliberation, the jury returned an informal verdict, saying: "We, the jury, believe sections 1, 2, 3 and 6 to be clear and represent a part of J. C. Gay's last will and testament. We do not believe sections 4 and 5 to be complete or represent said J. C. Gay's final will". The court then informed them, *sua sponte*, that their verdict must be in one or the other of two forms, one containing a finding in favor of the contestant, and the other in favor of the proponents, according as they should believe from the evidence; and also, on motion of the contestant, that "the effect of any part of the alleged will of J. C. Gay, deceased, being found by the jury, under the instructions heretofore given and the evidence in this case, not to represent the intention of the testator and not to be his will, is to declare that the will as a whole is not the true and last will and testament of said J. C. Gay, and, then, in that event, it is not the last will and testament of the said J. C. Gay". Upon further deliberation, the jury by its verdict, reciting the proper description of the paper writing, found that it "is not the true last will and testament of J. C. Gay".

The proponents challenge the correctness of the instruction thus given, as well as instructions 4, 5, 9 and 11 given for the contestant. It is argued that the first is objectionable for two reasons: first, because given after the jury had retired to consider its verdict; and, second, because it told the jury, in effect, that if any part of a testamentary paper was for any cause not the will of the testator no part of it was his will. This instruction contravenes the provisions of the statute cited. It is there stated that a trial by jury shall be ordered, if required by either party, "to ascertain

whether any, and if any how much, of what was so offered for probate be the will of the decedent''; evidently contemplating that if for any cause, as forgery or any unauthorized change after due execution, the will shall not speak the real intention of the testator, a jury may find the unaltered parts to be valid and the forged or altered parts invalid, and the court upon the chancery side shall adjudge and decree accordingly. So that, if a will is assailed for fraud or undue influence, the jury may ascertain and expunge the part tainted with fraud or undue influence. *Trust Co.* v. *Bailey,* 202 Mass. 283; *Florey* v. *Florey,* 24 Ala. 241; *Harrison's Appeal,* 48 Conn. 202. A will is not vitiated *in toto,* although a part of it may have resulted from the exercise of undue influence; or a devise or bequest in favor of a particular person or for a particular object may have been thus procured. and still the remainder of the will may be the act of the testator alone without suggestion from any improper source. *In re Hesse's Will,* 40 Minn. 504, 31 Am. St. 665, and note 691.

Nor is it erroneous to instruct a jury, at its request, after submission of the case. *Lee* v. *Quirk,* 20 Ill. 392; *Flinn* v. *Barlow,* 16 Ill. 39; *Farley* v. *State,* 57 Ind. 332; *State* v. *Pitts,* 11 Ia. 343; 1 Sackett on Instructions, §§211, 212; *State* v. *Cobbs,* 40 W. Va. 718. Nor, as held in *Freeman* v. *Freeman,* 71 W. Va. 303, is an instruction given at the request of the jury, after it has deliberated on the facts proved but has not returned its verdict, violative of Ch. 38, Acts 1907, provided the instruction correctly propounds the law applicable to such facts. Or the court may, upon like condition, instruct the jury on its own motion, without such request. *State* v. *Cobbs, supra; Blunt* v. *Com.,* 4 Leigh 689; *Gwatkin* v. *Com.,* 9 Leigh 678; *Dejarnette* v. *Com.,* 75 Va. 867.

But, whether erroneous or not, the instruction may have misled the jury. For, when applied to the facts proved, and in view of the informal verdict first returned, we can readily conceive that it did mislead. In part the proof was directed against clause 5 of the writing, which provided for payment of the ''Ellis Hannah debt for my son Pat Gay'', the contestant, that debt being represented by a note signed only by the

testator, the claim being that, as Pat had not signed the note, the testator could not properly charge its payment to the contestant. However, the evidence tended to show that, while as between immediate parties J. C. Gay alone was liable, the debt may have been the debt of the son.

But it is apparent that instructions 4, 5, 9 and 11, given over objection of the proponents, were all erroneous, for want of proof to sustain them. As to each of them, we fully concur in the view expressed by appellants that there was not the slightest evidence on which to base them. That any influence was exercised by the beneficiaries, or any one of them, does not appear from the testimony of a single witness examined in the case. The only foundation or excuse therefor, so far as we can see, was their presence at the home of their father on the day the will was made. Whether they were there at that time with or without his invitation, or to visit or nurse him during his illness, when they came and how long they remained, what they said or did to influence the *factum* of the will or the disposition of the property, no evidence tells us. One of them, it is true, procured the presence of the draftsman; but it appears he did so at the instance and direction of the testator. Another one of them passed through the room while the paper was in course of preparation, but she said nothing to the draftsman. Nor does it even appear from the evidence that any one of the beneficiaries knew or had any reason to suspect what disposition of the property their father intended to make or had made, until after his death, which occurred about three months later. It is therefore obvious that the record is wholly void of any proof supporting the instructions, all of which relate to the effect on a testamentary paper secured by improper or fraudulent means. It is true number 11 did properly state the law in so far as it advised the jury that, if the testator did not at the date of the will have sufficient mind "to understand the nature of the transaction and to recollect the property which he meant to dispose of and the object of his bounty and the manner in which he wished to distribute it among them, then under the law he did not have sufficient capacity to execute the will". The vice of the instruction rests wholly in the clause adding,

"although the jury might not believe from the evidence that an undue means or influence was employed with the testator by which under the circumstances he could not resist, if any there were used by the beneficiaries under the will".

As a new trial must be awarded, we have purposely refrained from a discussion of the evidence in the case, except . in so far as was necessary to determine the property of the instructions to which appellants have directed special attention.

For the reasons stated, we reverse the decree of October 5, 1911, set aside the verdict, and remand the cause for a new trial.

*Reversed and remanded.*