## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

March 4, 1921.

## THE PEOPLE v. HUGH HASSAN.

(196 App. Div. 89.)

(1) GRAND LARCENY—EVIDENCE—INADMISSIBILITY OF EVIDENCE OF WITNESS THAT HE WAS PRESENT WHEN ALLEGED ACCOMPLICES PLEADED GUILTY TO ONE PHASE OF CRIME CHARGED.

Where the theory of the prosecution was that the defendant, charged with the crime of grand larceny, and two alleged accomplices committed the crime together, and there was no controversy as to the identity of the defendant, it was error to permit one of the accomplices to be brought into court and identified and to permit the witness to testify that he was present in court when the alleged accomplices pleaded guilty in connection with one phase of the crime, where the crime referred to was a separate and distinct one and was committed a month before the one for which the defendant was being tried.

(2) SAME.

Even if the People were entitled to prove three crimes as part of a common scheme, this does not justify proof that two persons other than the defendant have pleaded guilty to one of the crimes involved in the common scheme.

(3) SAME—SEPARATE AND DISTINCT CRIMES.

The promise of the district attorney to prove a common scheme did not render competent the admission of evidence as to other burglaries, for

these were separate and distinct crimes and the proof of the commission of one in no wise tends to establish the commission of the other.

(4) SAME—MUST BE CONNECTED AS PART OF GENERAL PLAN.

To make one criminal act evidence of another they must be connected as part of the general plan or design, or the connection must be shown by such circumstances of identification as necessarily prove that the person who committed one crime must have committed the other; but a mere isolated crime cannot be given in evidence.

(5) SAME—WHEN ERROR TO CHARGE AS TO TESTING OF ACCOMPLICE.

Since the only competent incriminatory evidence was the admissions made by the defendant when informed of the statements made by his alleged accomplices, and the court in the course of the trial allowed the statement of the alleged accomplices to become the primary evidence, without proof that the admissions of the defendant in connection with the statements had been called to his attention, all questions as to when, where and by whom the statements were made became immaterial.

(6) SAME.

It was error for the People to prove that the defendant was arrested as the result of conversations with the alleged accomplices, and for the court to charge as to the testimony of accomplices as they were not called and sworn as witnesses.

(7) SAME—FAILURE TO DEFINE CRIME CHARGED AND LESSER CRIMES WHICH MAY BE PROVEN UNDER INDICTMENT.

It was error to read the statutory definition of burglary in the third degree and to instruct the jury that it had the right to fix the degree of crime of which it found the defendant guilty, and, among other things, to charge that the jury could find the defendant guilty of burglary in the third degree, attempt to commit burglary in the third degree, or not guilty of that charge, or grand larceny in the first degree as a second offense, or simply in the first degree, or an attempt to commit grand larceny in the first degree or not guilty, where neither grand larceny nor any of the degrees of larceny were defined.

(8) SAME.

The court should have instructed the jury fully as to the degrees of larceny and that they might ''find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto.''

APPEAL by the defendant, Hugh Hassan, from a judgment of the County Court of the county of Kings, rendered on the

14th day of April, 1919, convicting him of the crime of grand larceny in the first degree, second offense.

*John B. Merrill,* for the appellant.

*Harry G. Anderson, Assistant District Attorney (Harry E. Lewis, District Attorney,* with him on the brief), for the respondent.

JAYCOX, J.:

The defendant has been convicted of the crime of grand larceny in the first degree as a second offense. The previous conviction was admitted by a stipulation made upon the trial. The indictment also contained counts charging the defendant with burglary in the first degree and criminally receiving stolen property, each being charged as a second offense. These crimes are alleged to have been committed December 29, 1918.

Although the defendant is not indicted with them, the theory of the prosecution was that the defendant and the two accomplices committed this crime together. This in some measure explains the manner in which the trial was conducted, eventually resulting in a confused view of the evidence admissible and admitted and of the rules of law applicable thereto. At the very outset of the trial, although there was no controversy as to his identity, one of the alleged accomplices was brought into court and identified and then the witness was permitted to testify that he was present in court when this man and another, the alleged accomplices, pleaded guilty in connection with one phase of this crime on November 29th. It is true that counsel for the defendant failed to object to this testimony, but its prejudicial character is so plain that it cannot be seriously urged that the defendant had a fair trial with this testimony in the record. The district attorney referred to it as one phase of this crime. It was a separate and distinct crime committed a month before the crime for which defendant was being

tried. These men who entered pleas of guilty do not touch this case in this way only and then pass out of it, but from that time to the end they continued to be the most important factor in it. They made statements implicating the defendant, they talked to an officer and " as a result " he arrested the defendant, and at the end of the trial, so thoroughly have these men been stressed and featured, we find the court charging the jury in relation to the testimony of accomplices although they have not been sworn as witnesses. When persistent inquiry as to other crimes caused defendant's counsel to object, the objection was met with the assertion, " I expect to prove a common scheme in connection with these three thefts." Even if the People were entitled to prove these three crimes as parts of a common scheme, this does not justify proof that two persons other than the defendant have pleaded guilty to one of the crimes involved in the common scheme. No case involving a common scheme can be found in which proof of this character has been admitted. If the indictment were joint and charged a conspiracy to commit all of these crimes, no act of a co-conspirator after the accomplishment of the common object could be proved against this defendant. How much less reason or justification is there, then, for admitting evidence of this character against this defendant, separately charged and tried. The purpose of it was to give verisimilitude to the statements made by these men and which are later proven to convince the jury that these were not light, thoughtless statements made for some temporary purpose and perhaps later withdrawn or recanted, but calm, deliberate acts upon which they would and did sacrifice liberty itself. The admission of this testimony was error of the most vital character.

Under the promise of the district attorney to prove a common scheme, the witness mentions other burglaries and tells of the goods that were taken. This proof was improper. These were separate and distinct crimes. Proof of the commission of one in no wise tends to establish the commission of the other. To

make one criminal act evidence of another, they must be connected as part of a general plan or design, or the connection must be shown by such circumstances of identification as necessarily prove that the person who committed one crime must have committed the other, but a mere isolated crime cannot be given in evidence. There was nothing in common in these crimes which in any way tended to show defendant's connection with one by proof of the other. They were all burglaries and larcenies from the same company by the same means or method. But the opportunity, the means and the method were common to anyone who had the desire. In People v. Molineux (168 N. Y. 264, 16 N. Y. Crim. 120) Judge Werner, writing for the Court of Appeals, closed his discussion of this subject by quoting from Shaffner v. Commonwealth (72 Penn. St. 63), which he said clearly and succinctly states the limitation upon this class of testimony and the reasons for careful judicial discrimination upon its admission: " To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other. Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury. The most guilty criminal may be innocent of other offenses charged against him, of which, if fairly tried, he might acquit himself. From the nature and prejudicial character of such evidence it is obvious it should not be received, unless the mind plainly perceives that the commission of one tends, by a visible connection, to prove the commission of the other by the prisoner. If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the

jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt." (See, also, People v. De Garmo, 179 N. Y. 130, 134, 18 N. Y. Crim. 430; People v. Buffom, 214 id. 53.) The learned district attorney in his brief does not allude to or seek to justify the admission of this evidence, but does argue that the defendant's admissions of other crimes are competent under the rules laid down in People v. Loomis (178 N. Y. 400, 406, 18 N. Y. Crim. 213). The admissibility of that evidence upon the new trial which must be had herein may well be left to the trial court, as it will depend largely upon the condition of the proof at the time it is offered.

The important evidence in this case, the only competent incriminatory evidence, was the admissions made by the defendant when informed of the statements made by his alleged accomplices, but the trial was permitted to take such a course that the defendant's admissions were almost lost sight of and the statements of the alleged accomplices are considered as primary evidence. This situation was fostered by proof of the making of these statements, their identification, proof of the signatures thereto (witnesses and confessors), and marking them for identification before any proof was offered that the defendant ever saw them or made any admission in relation thereto. Part of this proof was objected to and exception duly taken to the court's ruling. No promise to connect or explanation of any kind was made. Necessarily, the jury would draw the conclusion that these statements constituted some evidence against the defendant. So potent, so pervasive is the deduction to be drawn from that incident, that the learned court with all his experience cannot escape its influence. In his charge, to determine the defendant's guilt, he says " we must have recourse to circumstantial evidence, and, above all, to the statements that were made." Perhaps it may be argued that the court referred by the word " statements " to testimony given upon the trial or to statements made by the defendant before the

trial. The context does not so indicate, and if the court had such an intention it was its duty to so indicate and to indicate it clearly. What the court referred to that was to be considered " above all " is made pretty clear in a later portion of the charge, where the court instructed the jury: " A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. We have the statement of these two young men. That would not be sufficient." A clear, unequivocal instruction that the jury had these statements before them and as to the law applicable to that situation. ' This is all traceable to the initial error in permitting proof to be made of these statements prior to and independent of evidence of their being called to the attention of the defendant and his admissions in connection therewith. His admissions alone are competent. The attention of the defendant might have been called to an imaginary confession, and any admissions he made would have been competent against him. The statements never became competent because made by any person other than the defendant, against him; they were only hearsay until by acquiescence therein he made them his own. Therefore, all questions as to when, where and by whom these statements were made were immaterial.

The People are permitted to prove and the court charges that the defendant was arrested as the result of conversations with two alleged accomplices. The testimony was objected to and an exception taken. This was clearly error. Under some circumstances this might be overlooked, but it was considered of sufficient importance by the People to call a witness to prove that fact alone. Its effect upon the jury under these circumstances must have been considerable. In the course of his charge the learned county judge said: " Now, who did the stealing? What is the evidence that points to the culpability of anybody in relation to this larceny and burglary? We have the story taken up by Detective Hines in that precinct, whose

aid was called in by these people. Hines has told you the story, the apprehension of these two men, these two young men who, you may recall, sat over here in this jury-box until excluded from the court-room. Now, these two young men, upon this night in question, were brought to this station-house and interrogated by these officers, and as the result of that interrogation, these two young men made statements. Those statements were finally reduced into the form of a typewritten statement, and from the evidence you may properly gather that they were signed in that station-house that night. Detective Hines has told you that there were conversations with these two men, and as a result of these conversations, certain detectives arrested this defendant. He has told you of the conversations with these two men on the night in question when they were brought to the station-house. * * * Now, confessions are of interest in the law, because all that is required, under the law, is that a confession must have some other testimony. A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. We have the statement of these two young men. That would not be sufficient. Was there the confession, therefore? And, therefore, we are driven again to study that statement of this defendant that is alleged to have been made there. What are these facts? Because, if you accept that *in toto,* if you accept his statement as a brief but absolute acquiescence in the statement made by these two young men, then there must be something else other than that mere statement, there must be other evidence that tends to connect him with the commission of the crime. It is not required that every little bit of evidence must be supported, but the evidence must point in that direction. For instance, the larceny must be proven; and is that not proven, as I have already said, absolutely, to your satisfaction? So, take up each of these various elements that have been called to your attention by the district attorney in his summing up as points

corroborating the main story, which, of course, must be supported by this confession in order to convict." I think it clearly appears from these extracts that the court was not clear whether the evidence against the defendant consisted mainly of a confession by the defendant or the testimony of accomplices, or of both. The fact was, however, that the People's case rested absolutely upon an alleged confession by defendant. As applied to this situation, the charge was erroneous, as the jury were told they "must have some other testimony." The Code of Criminal Procedure (§ 395) says that a confession is not sufficient to warrant a conviction "without additional proof that the crime charged has been committed." The charge as to testimony of accomplices was correct as an abstract proposition (Code Crim. Proc., § 399), but it had no application to the case on trial; there was no such testimony, as the accomplices were not called and sworn as witnesses. The vice of this kind of a charge is that it leads the jury to believe that testimony of that character is before them and permits a conviction upon the unsworn statement of witnesses with whom defendant has not been confronted nor had the opportunity to cross-examine.

The defendant was convicted of grand larceny in the first degree. The court in its charge read the definition of burglary in the third degree from section 404 of the Penal Law and charged the jury that they had the right to fix the degree of the crime, but it did not define grand larceny in the first degree nor any of the other degrees of crime of which it said the jury might convict the defendant. The charge also limited the jury to finding the defendant guilty of burglary in the third degree, attempt to commit burglary in the third degree or not guilty of that charge, or grand larceny in the first degree as a second offense, or simply in the first degree, or an attempt to commit grand larceny in the first degree or not guilty. Grand larceny in the first degree and the other degrees of larceny should have been defined to the jury and the jury instructed that they "may find the defendant not guilty of the degree

charged in the indictment, and guilty of any degree inferior thereto." (Code Crim. Proc., § 444.) I am led to make the last criticism of the court's charge by the fact that when the court came to impose sentence he was apparently shocked by the severity of the sentence he was obliged to impose, and suggested setting aside the verdict and letting the defendant plead guilty of grand larceny in the first degree as a first offender. With full instructions as to the degree of the crime and their rights in relation thereto, the jury might have obviated the necessity of such severe punishment. In any event, I think the jury should have been so instructed. I am also of the opinion that the evidence was insufficient to justify the verdict.

The judgment of conviction of the County Court of Kings county should be reversed and a new trial ordered.

JENKS, P. J., RICH, PUTNAM, and BLACKMAR, JJ., concur.

Judgment of conviction of the County Court of Kings county reversed and new trial ordered.