# CHARLESTON.

## State v. Harry Spurr.

### (No. 5205.)

Submitted October 6, 1925.    Decided October 13, 1925.

1. Witnesses—*Person Who Has Pleaded Guilty to Felony, Other Than Perjury, But Not Sentenced, May Testify as Witness by Leave of Court.*

    A person who has pleaded guilty to a felony charge, other than perjury, but not sentenced, may testify as a witness in a criminal prosecution, by leave of the court.    (p. 125.)

    (Witnesses, 40 Cyc. p. 2208.)

2. Criminal Law—*Admitting Testimony of Persons Who Heard Confession or Admission of Accomplice Made After Crime Was Committed, Not Part of Res Gestae, and Not in Presence of Accused, Held Error.*

    A confession or admission of an accomplice in a felony, made after the crime has been committed, and not a part of the *res gestae*, and not made in the presence of the accused on trial, is not evidence against the accused; and it is error to permit the persons who heard the confession or admission to detail the same to the jury.    (p. 127.)

    (Criminal Law, 16 C. J. § 1310.)

3. WITNESSES—*Party Extending Cross-Examination to Facts and Circumstances Not Testified to on Direct Examination, Over Objection, Makes Witness His Own as to Facts and Matters Not Within Legitimate Scope of Cross-Examination.*

Where a party extends the cross-examination of a witness to facts and circumstances not connected with the matter testified to by him on direct examination, over objection of the other party, he makes the witness his own as to such facts and matters not falling within the legitimate scope of cross-examination.   (p. 129.)

WOODS, JUDGE, absent.

(Witnesses, 40 Cyc. p. 2504.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Error to Circuit Court, Doddridge County.

Harry Spurr was convicted of breaking and entering a storehouse with intent to commit larceny, and of committing larceny, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Law & McCue* and *W. R. Brown,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, PRESIDENT:

Upon an indictment charging him with breaking and entering a storehouse of J. N. Markey, not a dwelling house or outhouse adjoining thereto or occupied therewith, with the intent to commit larceny, and of the commission of larceny of certain goods therein found, Harry Spurr, plaintiff in error, was found guilty by the jury and sentenced to the penitentiary for two years, on April 11, 1924.   From that judgment and sentence he prosecutes this writ.

Spurr was jointly indicted with Hupp Squires, Howard Bee and Otis Yeater. Bee confessed, but it appears that no sentence was imposed upon him, except a recommitment to the reform school (from which institution he had been and then was on parole), as having violated his parole.   Yeater was

granted a separate trial. Spurr and Squires were tried jointly. Both were convicted. Spurr was 18 years old, Yeater 17 and Bee 17, at the time of trial. The age of Hupp Squires is not given. Evidently he was about the same age as the others, for they are all designated as "boys" in the record. On the morning after the crime, Cunningham, Chief of Police, suspecting Howard Bee, then on parole from the reform school and with whom he had previously had experience, went to the latter's home accompanied by Wilson, a member of the state constabulary, and took him to the court house, where he confessed to them that he had participated in the crime, and designated Spurr, Squires and Yeater as participants and accomplices. He told them how the property was taken and where it was secreted; and it was found at that place.

Bee having confessed and without being sentenced, testified for the state to the effect that he and the others implicated were at a poolroom that night and from there went to Budd Spurr's plumbing shop where they remained until one o'clock. From there they proceeded to the store (Squires having previously proposed the venture to the witness), which they entered (excepting Yeater), put the stolen goods in suitcases, and concealed them under some fodder in a barn about 2½ miles distant. He got home about 5 o'clock A. M.

Loyal Jack Saddler who was in the Clarksburg jail awaiting trial on a charge of "white slavery" in the federal court, testified that while in jail, Squires, who was in the same jail, told him the details of the crime, and that Spurr told him the same. Another witness summoned for the state, Earle Moore, who was in the jail, discredited Saddler, and his evidence is to the effect that Saddler was trying to get persons interested in the store which was robbed, to go on his bond, with the intention of forfeiting it, thus escaping prosecution, by telling them that Spurr and Squires had admitted the robbery to him.

Witnesses Cunningham and Wilson, the officers to whom Bee had confessed, testified to the confession and detailed what Bee had told them to the effect that he said that Spurr, Squires and Yeater were with him when he entered the store. This part of their testimony was objected to on the ground

that Spurr was not present; and the admission of this testimony forms one of the points of error complained of.

Otis Yeater said he was with Spurr, Squires and Bee at Wolf's poolroom at about 11 o'clock P. M.; from there they went to the plumbing shop where they remained until about 1:30 A. M.; from there they came up town, where he left them and went home. While at the shop the others said they were going to break into Markey's store and get some clothes.

The defendant Harry Spurr denied guilt. He admitted having seen Bee and Yeater at the poolroom, but denied being at the shop with them. He left the poolroom about 11 o'clock that night and was talking to Robinson on the street when he met his brother and got in his car, Haskins being therein, and was driven home where he went to bed and slept until morning, and knew nothing of the robbery until about 3 o'clock P. M. the next day when his mother told him the officers had been at the house with a warrant for him charging him with complicity in the robbery. He immediately went to the officers to see about it, and submitted to arrest. The officers confirm that he came to them as stated. Wallace Spurr and Charles Haskins say that Harry Spurr and Robinson got in the car about 11 o'clock P. M., as detailed by Harry Spurr, and Harry Spurr was driven home where he got out and went in. Robinson was carried further on to his home. Helen Spurr, the mother, says Harry came home about 11 o'clock that night and went to bed and remained there. She saw him in bed at 3:30 A. M. the next morning when she got up to cook breakfast for her boarders. Robinson and Coy Brown corroborate Harry Spurr's statement that he went home at 11 o'clock that night.

The defense is based upon the alibi, and the alibi is rather complete. The Jury within its province found that the alibi did not outweigh the state's evidence of the defendant Spurr's actual presence at and participation in the crime.

The errors relied upon are: (1) that Howard Bee was permitted to testify after his confession and before his sentence; (2) permitting Officers Cunningham and Wilson to detail their conversation with Howard Bee, in which conversation he implicated defendant as an accomplice in the crime,

all in the absence of the prisoner; (3) cross-examination of Earle Moore on matters not pertinent to his evidence in chief, for the purpose of laying a foundation for contradiction of his evidence so adduced on cross-examination, and permitting the introduction of evidence tending to contradict him on the foundation so laid; and (4) giving instructions for the state, and amending instruction No. 1 offered by defendant. This last assignment of error is not mentioned in the argument and has apparently been abandoned; therefore it will not be considered.

The first assignment is based on Sec. 17, Chap. 152, Code 1923, which reads: ''Except where it is otherwise expressly provided, a person convicted of felony shall not be a witness, unless he has been pardoned or punished therefor, but a person convicted of felony and sentenced therefor, except it be for perjury, may by leave of the court, be examined as a witness in any criminal prosecution, though he has not been pardoned or punished therefor, but a person convicted of perjury shall not be a witness in any case, although he may have been pardoned or punished''. It is argued that while a felon who has been convicted and sentenced may be examined in a criminal prosecution by leave of court, although he has not been pardoned or punished, yet a person convicted but not sentenced may not be a witness in a prosecution even by leave of court. It is difficult to perceive a plausible reason for allowing a person who has been convicted and sentenced to testify and refusing to receive testimony from one who has confessed or been found guilty by a verdict and not sentenced. Would his testimony be less credible in one case than in the other? The statute is in derogation of the common law and must be strictly construed. As pointed out by the Attorney General, under the common law a person convicted of a heinous crime and sentenced, could not testify, but he could testify after a verdict of guilty or an accepted plea of guilty and before sentence. 28 R. C. L. page 456-7, Sec. 43. The reason for the rule at common law that a convicted felon could not testify was that such person was deemed to be too corrupt morally to be trusted to speak the truth, and was insensible to the restraining force of an oath. It applied generally to

.those convicted of treason, felony, and the *crimen falsi*. Treason and almost all felonies were capital crimes, and those convicted of such crimes were considered as unworthy of belief in the courts. "But the mere verdict of the jury is not sufficient for this purpose; for it may be set aside, or the judgment may be arrested, on motion for that purpose. It is the judgment, and that only, which·is received as the legal and conclusive evidence of the party's guilt, for the purpose of rendering him incompetent to testify". 1 Greenleaf on Ev. (16th ed.) Sec. 375. So, at common law unless sentence had been pronounced upon the felon he could testify. The statute quoted has changed the common law rule; except in cases of conviction for perjury, and allows the felon to testify by leave of the court. We do not construe the statute to say that a person may not testify by leave of the court if he has been convicted and not sentenced. While there is some confusion in the meaning of the word "convicted", in this statute it is used in the sense of the definition given in 1 Bouvier page 345, to the effect that a conviction is that proceeding of record which ascertains the guilt of the party and upon which the sentence or judgment is founded. It not only includes the verdict or confession of guilt, but is used to denote the final judgment. See *Commonwealth* v. *White,* 79 Va. 611. And such was the meaning given to the use of the word in this same statute by the Virginia Court in *Blair* v. *Commonwealth,* 25 Grat. 858, wherein it was said: "But the further statement contained in 1 Bishop Sec. 361, as before mentioned, that the word conviction sometimes denotes the final judgment of the court is equally true. As an example of the use of the word in that sense, the Code Ch. 195, Sec. 19 (practically the same as·Chap. 152, Sec. 17 of W. Va. Code under discussion), may be referred to, which declares, that 'except where it is otherwise expressly provided, a person *convicted* of felony shall not be a witness unless he has been pardoned or punished therefor, and a person convicted of perjury shall not be a witness although pardoned or punished.' The word *convicted* in this section means *adjudged guilty*". Our statute. does not change the common law rule that a person found guilty of a felony may testify until the sentence of the law

is pronounced.   See *Brown* v. *Commonwealth*, 86 Va. 935;
*Woods* v. *Com.*, 86 Va. 929 and *Briggs* v. *Com.*, 82 Va. 554.

Second assignment of error.   By bill of exceptions No. 5
it appears that Officers Cunningham and Wilson were per-
mitted to detail, over defendant's objection and exception, a
conversation had by them with Howard Bee (who afterwards
at the trial pleaded guilty), on the morning after the rob-
bery, in which conversation Bee told them that the three
boys, Spurr, Squires and Yeater, were his confederates in
the perpetration of the robbery, and described the manner in
which the crime was committed and the stolen goods carried
away and secreted.   This was hearsay evidence coming from
an accomplice, in the nature of a confession made after the
commission of the crime, not in the presence of the accused,
and was not a part of the *res gestae*, and it is reasonably well
settled that such evidence is not competent.   *State* v. *McCoy et
al.*, 61 W. Va. 258.   The second point of the syllabus reads:
"When two or more accomplices are tried together for fel-
ony, the declaration or confession of one made after the crim-
inal act in the absence of the others, too long after it to be
part of the *res gestae*, is admissible in evidence; but the court
must instruct the jury that it is not to be considered as evi-
dence against any one but the one making the confession."

In *Hunter* v. *Commonwealth*, 7 Grat. 642, a house in Lee
County, Virginia, had been burglarized and $1,400 in money
and other articles were stolen.   On the following morning
tracks of men found near the house were followed to where
they ceased, and tracks of horses began.   The horses' tracks
were followed eleven miles into Tennessee where they ended
near the house of the accused.   A horse was there found which
had been ridden the night before, and the tracks of which
corresponded with the tracks which had been followed. Hardy
was found near the prisoner's house and was arrested.   He
implicated the defendant Hunter.   Hardy had been convicted.
In the trial the verbal confession of Hardy made after his
arrest and in the absence of the accused, was detailed by wit-
nesses, over the objection of the prisoner.   The appellate court
held this to be error, saying in point 1 of the syllabus:

"Confessions or admissions of an accomplice in a felony, made after the commission and completion of the offence, are not competent evidence against a prisoner, even though a previous conspiracy and combination between the prisoner and the accomplice to commit the felony has been proved".

Discussing the admissibility of confessions of other persons, Greenleaf in Vol. I (16th ed.), Sec. 233, page 371 of his work on evidence, says, "In fine, the declarations of a conspirator or accomplice are receivable against his fellows only when they are either in themselves acts, or accompany and explain acts, for which the other are responsible; but not when they are in the nature of narratives, descriptions, or subsequent confessions". See *Jones* v. *Commonwealth,* 31 Grat. 836-850.

In *Oliver* v. *Com.,* 77 Va. 590, a police officer testified that when he arrested Williams soon after the commission of the crime the latter told him that the prisoner had employed him and another to commit the crime, and they did so. The court said this was error, the evidence doubtless being introduced for the purpose of corroborating Williams by showing that he had made the same statement out of court that he had made in court. It was hearsay, even though a previous conspiracy between the prisoner and Williams had been proved; and was made after the commission of the offense and after the object of the conspiracy had been accomplished. And in Roscoe's Crim. Ev. (13th ed.) page 46, it is said: "It is quite settled generally, that a confession is only evidence against the person making it, and cannot be used against others". See also Underhill's Crim. Ev. (3rd ed.) Sec. 226.

The Attorney General contends that the rule of evidence enunciated in *State* v. *McCoy* does not apply, because no objection or exception was made to the introduction of the evidence. Such might be inferred from the stenographer's transcript, but the court has certified in bill of exceptions No. 5 that the evidence of these officers was in fact objected to and exceptions duly taken.

On the authority of Wharton on Crim. Ev. 2nd Vol. (10th ed.), page 1437, the State contends that Bee's confession accusing defendant as a perpetrator of the crime was admissible because the purpose of the conspiracy to commit the lar-

ceny was not complete, the stolen articles not having been distributed, and *Boyd* v. *State*, 68 Ga. 661; *Carter* v. *State*, 106 Ga. 372 and *Rawlins* v. *State*, 124 Ga. 31, are cited as sustaining the proposition. The tenor of these cases is that the acts and conduct of an accomplice during the pendency of the unlawful act, not alone in its actual perpetration but also in its subsequent concealment, were admissible against another accomplice. His acts and declarations while carrying out the purposes of the conspiracy are admissible against his co-conspirators. These decisions have little application to the case under consideration. It was error to permit the officer to detail their conversations with Bee in which he accused the prisoner as a partner and perpetrator of the crime. Such evidence was incompetent because it was hearsay. It is plain that its admission was prejudicial.

The third and last assignment of error. Loyal Jack Saddler, a prisoner in the Clarksburg jail at the time Squires and Spurr were confined there, testified that both Squires and Spurr had told him they had participated in the store robbery for which they were then being held. He denied on cross-examination that he told Earle Moore, another prisoner, while in jail, that he expected to get Ora Doak and his brother (persons financially interested in the store) when they came to see him, to procure bail bond for him in exchange for work he, Saddler, would do on the case while in jail with Spurr and Squires, and when he was so liberated on the anticipated bond, he would "jump" the bond, and "shake the dust off his feet". Moore was introduced by defendant and testified that Spurr and Squires had made no such statements to Saddler in his presence, and that Saddler had told him that the reason he was making such statement against Squires and Spurr was that he expected to or was going to get Doak to go on his bail bond and then he was going to "skip" that bond. On cross-examination he was asked if he did not tell the prosecuting attorney and Ora Doak in the presence of Walter Doak, while in jail, that Spurr and Squires had told him that they were participants in the robbery. This cross-examination was objected to as being foreign to the direct examination. The court permitted the witness to answer, and

he denied making such statement. The foundation thus laid for contradiction, Ora Doak testified on rebuttal that Earle Moore did make the statement to him and the others on the occasion of their visit to the jail. Neither counsel have cited authorities to sustain their contentions. One says it was error to permit the cross-examination thus laying foundation for contradiction; the other says it was not error, the subject-matter of the cross-examination relating to the subject-matter of the direct examination. Under the English rule the cross-examination would have been proper. This rule is that where a witness is called to testify in regard to a particular fact, he becomes a witness for all purposes and upon cross-examination may be questioned upon all matters material to the issue, the cross-examination not being confined to the matter testified to in the direct examination. But in this State we adhere to the ''American rule'' enunciated in *Philadelphia &c. Ry. Co.* v. *Stimpson,* 14 Pet. 461, 10 L. ed. 542, which is, that the cross-examination can only extend to facts and circumstances connected with the matters stated in the direct examination. If a party wishes to examine the witness upon matters not brought out in the direct examination, he must do so by making the witness his own. And where permission is given a party to conduct a cross-examination outside of the limits of the direct examination and upon matters not touched upon in direct examination, that party makes the witness his own witness upon the matters inquired about outside of a legitimate cross-examination. Jones on Ev. Sec. 821, and cases cited; *Prunty* v. *Traction Co.,* 90 W. Va. 194; *State* v. *Hatfield,* 48 W. Va. 561; *Virginia &c.* v. *Chalkley,* 98 Va. 62. The direct testimony of Moore was that Spurr and Squires had not implicated themselves in the robbery, to Loyal Jack Saddler, in his presence, and that Loyal Jack Saddler had told him the reason, stating it, why he (Saddler) was telling that Spurr and Squires had told him they were participants in the crime. His evidence was solely for the purpose of discrediting the testimony of ''Loyal Jack''. Whereas, the cross-examination inquired about another occasion, and another conversation between the witness and other parties, and in no way explanatory or contradictory of the

reasons given by ''Loyal Jack'' for his accusation. It has been held that distinct and independent statements in no way connected with the statement made in the direct examination, and which in no way tend to qualify, explain or contradict such statement, cannot be called out on cross-examination, although forming a part of the same conversation. *Vance* v. *Richardson,* 110 Cal. 414; *Compher* v. *Browning,* 219 Ill. 429; *Commonwealth* v. *Keyes,* 11 Gray (Mass.) 323; *Jacobs* v. *Croydon,* 67 N. H. 591; *People* v. *Beach,* 87 N. Y. 508. And it is also held that where the witness has been examined in chief with reference to one conversation he cannot, on cross-examination, be questioned as to a different conversation. *State* v. *Coates,* 22 Wash. 601, 61 Pac. 726. It is not error to refuse to permit cross-examination as to a conversation which was neither wholly nor partially referred to on direct examination. 3 Ency. Ev. 836; *Gaines* v. *State,* 38 Tex. Crim. 202, 42 S. W. 385; *Wilhelmi* v. *Leonard,* 13 Iowa 330. While considerable latitude is given in cross-examination, the rule as above stated should be adhered to as conducive of orderly procedure. The evidence sought to be introduced to the jury by the cross-examination and through subsequent contradiction by Doak, was that Moore had said that the accused had confessed to him complicity in the crime. It was without the legitimate scope of cross-examination and was not explanatory, contradictory nor qualifying of the evidence in chief. We think it was error to permit it, and it was error to allow Doak to contradict the denial of Moore thus brought out by the cross-examination.

*Judgment reversed; verdict set aside; new trial awarded.*