STATE OF WEST VIRGINIA *v.* WILLIAM PRICE and BILL BRUCE

(No. 7857)

Submitted February 15, 1934. Decided March 20, 1934. (Rehearing Denied June 11, 1934)

See also 113 W. Va. 326, 167 S. E. 862.

*Simms & Simms* and *George D. Moore,* for plaintiffs in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

KENNA, JUDGE:

The defendants, William Price and Bill Bruce, were indicted in the intermediate court of Kanawha County for murder. They were convicted of first degree murder with a finding by the jury that their punishment should be fixed at imprisonment for life. They were so sentenced, and the circuit court of Kanawha County refused a writ of error to the judgment of the intermediate court of Kanawha County. To the judgment of the circuit court, this writ of error was granted.

The indictment was for the murder of May Stone, who lived with her husband, Dryden Stone, at Hernshaw in Kanawha County. On the night of September 28, 1931, the Stone home, a one-story Jenny Lind dwelling was burned to the ground. In the fire, May Stone, who was the wife of Dryden Stone and 72 years of age, received burns from the effect of which she died on September 30th. The state's theory was that the defendants, William Price and Bill Bruce, were participants in a conspiracy that culminated in the incendiary burning of the Stone dwelling.

There was evidence that Mr. and Mrs. Stone and Charlie Noble, the son of Mrs. Stone by a former marriage, had retired at nine or nine-thirty o'clock; that, at that time, there was no fire of any kind in the dwelling; that they were awakened at about midnight to find the house in flames; that both Dryden Stone and Noble thought that Mrs. Stone had left the dwelling; that upon going to the outside of the dwelling it was discovered that the fire was burning in two separate parts of the house; and that Charlie Noble, outside of the dwelling, smelled either gasoline or kerosene at the time of the fire.

In our opinion, this proof is sufficient to justify the submission of the case to the jury on the theory that the fire was of incendiary origin.

There is proof tending to show that on an occasion when Bill Bruce, Charley Bruce and William Price were together some two or three weeks before the time of the fire, they discussed the problem of getting Dryden Stone off the creek. The proof shows that Dryden Stone had been a general informer against those conceived by him to be violators of the prohibition law in the neighborhood of Hernshaw, and that he had caused the dwellings of both Bruce and Price to be searched. There is testimony that, subsequent to the occasion upon which Bruce and Price discussed the question of getting Dryden Stone off the creek, each, on different occasions and not in the presence of each other, had made statements to the effect that they purposed to get rid of Dryden Stone by burning his dwelling. If a conspiracy had been shown, or if there was proof to show a common design amounting to a conspiracy, these statements were admissible. *State* v. *Baker,* 84 W. Va. 151, 99 S. E. 252. Otherwise, these statements made by the defendants are inadmissible except as against the one making the statement. *State* v. *McCoy,* 61 W. Va. 258, 57 S. E. 294. However, there was no objection at the time of their introduction, nor was there any motion to limit their admissibility to the defendant making the statement. The question cannot be raised for the first time in this court. We are therefore of the opinion that the state made a sufficient prima facie showing to justify presenting its case to the jury on the theory that May Stone came to her death in consequence of an incendiary fire, and, furthermore, that that fire was the result of a conspiracy participated in by William Price and Bill Bruce.

It is alleged as error that the prosecuting attorney was permitted to cross-examine and contradict a state's witness, Dorothy James, on the ground of surprise. She had testified favorably to the state's contention in a previous trial of this same case. Her testimony on the former occasion depended in part upon her having seen the defendants on the night of the fire. When placed upon the stand in this trial, after preliminary questions, the prosecuting attorney asked her if she had seen the defendants on the night of the fire and she flatly denied

it. Thereupon, the prosecuting attorney avowed his surprise and asked her if she had not testified on the former trial that she had seen the defendants on the night of the fire. This she admitted and her examination in chief thereupon ended. Under guise of cross-examination, counsel for the defendants developed by this witness testimony to the effect that she knew nothing whatever about the fire until after it was over; that her testimony at the former trial was false in its entirety, and that she swore falsely at the former trial by reason of inducements held out to her by Sergeant Carmen, the state policeman in charge of the case. None of these things had been brought out upon her examination in chief. She therefore became a witness of the defense as to them. *State* v. *Spurr*, 100 W. Va. 121, 130 S. E. 81. Having, for those purposes, become a witness for the defendants, the prosecuting attorney was at liberty to contradict her concerning those matters, not on the theory of impeaching his own witness, but on the theory of impeaching a witness for the defense. *Norfolk & Western R. Co.* v. *Thomas*, 110 Va. 622, 66 S. E. 817. This he did by tendering and introducing in evidence the affidavit of the witness made prior to the former trial of the case, which showed her knowledge of the fire before it took place, tended to establish the truth of her testimony at the former trial and denied any inducements or intimidations in the making of the affidavit. This was tendered by the prosecuting attorney in contradiction of her testimony given during her cross-examination, not in contradiction of what she had stated in response to her examination in chief. That part of it was closed by her admission of previous contradictory statements. It is true that correct practice would require that the purpose for which this affidavit was admitted in evidence should be strictly limited when it went before the jury. However, since there was no motion to instruct the jury as to its limited use, the defendants are not now in position to complain that it went before the jury without such an admonition. *Norris* v. *State*, 16 Ala. App. 126, 75 So. 718 (certiorari refused 200 Ala. 699, 76 So. 997); *People* v. *Rubalcado*, 56 Cal. App. 440, 205 P. 709. We think, therefore, that there was no error committed by the trial court in the manner in which the testimony of the witness, Dorothy James, was admitted.

Another serious assignment of error is based upon the fact that the jury upon its return into court on Monday morning requested the reading of the state's instructions. There was no objection to this, and the state's instructions were read to the jury, the court asking the jury if that was all they desired. The record shows that the jury thereupon started toward their room, as if to indicate they desired nothing more. Thereupon, counsel for the defense asked that all of the instructions be re-read to the jury. The court replied that the instructions requested had been re-read to the jury, and thereupon, the jury filed out. To the action of the court in refusing to re-read the instructions of the defense, the defendants objected and excepted. The question attempted to be raised in this court, based on these circumstances, was not raised in the trial court. Counsel argues here that the reading of the instructions offered by the state, after they had been described as such, was a violation of Code, 56-6-20, which requires that all of the instructions should be the instructions of the court, and not of the parties, in so far as the knowledge of the jury is concerned. This is perfectly true, and it is also true, as contended by counsel for the defense, that this court has held this statute to establish a mandatory rule of practice. *State* v. *Clark,* 64 W. Va. 625, 63 S. E. 402. However, it is equally true that advantage cannot be taken in this court of this question when it is not raised in the trial court. *State* v. *Clark,* 64 W. Va. 625, 63 S. E. 402. The objection in the trial court did not go to the question of disclosing to the jury what instructions had been offered by the state, but went to the question of the trial court not causing the instructions of the defense to be read. On this question, the trial court had a broad discretion, and it is usually not error for the trial court to comply with a request of the jury in the matter of re-reading to them instructions that they may wish to hear. *Gay* v. *Gay,* 74 W. Va. 800, 802, 83 S. E. 75; *Freeman* v. *Freeman,* 71 W. Va. 303, 314, 76 S. E. 657; *People* v. *Finali,* 31 Cal. App. 479, 160 P. 850; *Hysler* v. *State,* 85 Fla. 153, 95 So. 573. We, therefore, are of the opinion that there was no error involved in the conduct of the trial court upon this question.

An assignment of error is based upon the opening state-

ment of the prosecuting attorney. It does not appear that this statement was made a part of the record. It is not, therefore, possible to consider an assignment of error based upon it.

After the state had examined Dorothy James and after she had been examined by counsel for the defendants and cross-examined by the prosecuting attorney in the manner before set out, the defense undertook to introduce by her a letter that she had written to William Price after the former trial, and a large number of letters that had been exchanged between her and her husband, Roy James, both before and after that trial. The purpose of these letters was to show the falsity of her testimony at the former trial. Whatever may be the relevancy of such matter in attacking the credibility of an adverse witness, it is not proper matter in sustaining the credibility of the defense's own witness, because, for that purpose, it is manifestly self-serving. Since we have already held that Dorothy James became the defense's witness on the subject matter of these letters, it follows that we hold the trial court did not err in refusing their admission.

Roy James, who was put upon trial for his participation in the conspiracy that resulted in the burning of the Stone home and who, during that trial, withdrew his plea of not guilty and pleaded guilty to murder in the first degree and received a life sentence for his part in the crime, was put upon the stand as a witness for the state. The only material thing that was shown by this witness, over the objection of the defense, was that he had pleaded guilty to his part in the burning and was now serving a life sentence therefor.

On this question, Wharton's New Criminal Evidence, vol. 2, p. 1435, has this to say:

> "When the common enterprise is at an end, whether by accomplishment or abandonment, no one of the conspirators is permitted, by any subsequent act or declaration of his own, to affect the others. His confession, therefore, subsequently made, even though by the plea of guilty, is not admissible in evidence, as such, against any but himself. Even the most solemn admission made by him after the conspiracy is at an end is not evidence against accomplices."

742

To the same effect are the following cases, sustaining what appears to be an universal rule. *State* v. *McCoy*, 61 W. Va. 258, 57 S. E. 294; *State* v. *Baker*, 84 W. Va. 151, 99 S. E. 252; *State* v. *Spurr*, 100 W. Va. 121, 130 S. E. 81; *Hunter* v. *Commonwealth*, 7 Gratt. 641; *People* v. *Hassan*, 187 N. Y. Supp. 115; *State* v. *Bowker*, 26 Ore. 309, 38 P. 124; *People* v. *Stevens*, 47 Mich. 411, 11 N. W. 220. We do not find any authority to sustain the admission in a criminal case, for general purposes, of the fact of the conviction or plea of guilty of a co-conspirator or accomplice on the trial of persons accused of participating in a joint crime. We, therefore, cannot escape the conviction that to do so in this case was error, and, that having been determined, its powerful contribution to the subsequent conviction cannot be doubted.

For the foregoing reasons, the judgment of the lower court is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*